The People of the State of New York ex rel. Blanche Sisson, Relator, v. Howard Sisson, Respondent.*

Supreme Court, Chenango County, October 29, 1934.

*Frank W. Barnes*, for the relator.

*Charles B. Bechtold* [*Ward N. Truesdell* of counsel], for the respondent.

Personius, J. Petitioner and respondent reside in Chenango county, N. Y. They are the mother and father of Beverly Jane Sisson, aged eight. The petitioner alleges that the respondent is affiliated with a cult known as " The Megiddo," having a mission at or near Rochester, N. Y.; that said cult holds, teaches and practices certain doctrines, beliefs, principles and theories which are not in accord with commonly-accepted teachings and practices. She further alleges that the respondent claims and exercises the right to take the child from the home of the parties (where petitioner is confined by invalidism) to the Megiddo mission, at more or less regular intervals, for periods of from two to five days; that at said mission the child is taught the doctrines and principles of the cult, and theories and beliefs not ordinarily accepted are instilled in the child's mind; that the petitioner and her child are deprived of the normal relationship and mutual benefit that should exist between them, to the detriment of the child's education, welfare

*See, also, *Matter of Sisson* (152 Misc. 806).

and health. The petition asks that the petitioner be awarded the custody of said child equally with the respondent and that proper provision be made for the welfare of the child, and for such other and further relief as may be just.

Section 81 of the Domestic Relations Law provides that "A married woman is a joint guardian of her children with her husband, with equal powers, rights and duties in regard to them."

On the return of the writ the respondent appeared specially and objected to the jurisdiction of the court. He says the writ is not authorized by section 70 of the Domestic Relations Law because the parents are "not living in a state of separation." That section provides in part: "A husband or wife, being an inhabitant of this state, living in a state of separation, without being divorced, who has a minor child, may apply to the supreme court for a writ of habeas corpus * * *; and on the return thereof, the court * * * may award * * * the charge and custody of such child." The character and extent of the separation necessary to enable one parent to proceed under said section has not been definitely adjudicated. (*People ex rel. Sternberger* v. *Sternberger*, 12 App. Div. 398, 400.) We do not here determine whether the petitioner and respondent are living in such a "state of separation" as to come within the section. We assume they are not.

Where the interest and welfare of a child is involved, can one parent proceed by habeas corpus against the other parent only when authorized to do so by statute?

The writ of habeas corpus existed at common law. "The statutes which have been passed in England * * * and in this State from the time of its first organization, have not been intended to detract from its force but rather to add to its efficiency * * *. This writ cannot be abrogated, or its efficiency curtailed, by legislative action." (*People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559, 566.) Statutory authority for the writ is, therefore, unnecessary.

"The writ of habeas corpus was limited in its origin to cases of restraint under color or claim of law. * * * In time, however, it was extended to controversies touching the custody of children, which were governed, not so much by considerations of strictly legal rights, as by those of expediency and equity and, above all, the interests of the child." (*People ex rel. Riesner* v. *N. Y. N. & C. Hospital*, 230 N. Y. 119, 124.) "In the case of children of the age of discretion the object of the writ was usually accomplished by allowing the party restrained the exercise of his volition, but in the case of an infant of an age to be incapable of determining what was best for itself the court or officer made the determination for it.

and, in so doing, the child's welfare was the chief end in view. * * * · But the jurisdiction to be exercised by the court or officer is equitable in its character, and the welfare of the child is the chief object to be attained, and must be the guide for the judgment of the court." (*People ex rel. Pruyne v. Walts*, 122 N. Y. 238, 241, 242.) (See, also, *People ex rel. Rich v. Lackey*, 139 Misc. 42, 45–56.) The English Court of Chancery exercised the "widest powers of interference in behalf of infants who stood in need of its protection." This power is now exercised by the Supreme Court of the State of New York. The "power seems only to be limited by the necessities of the case, having a due regard for the welfare of the infant." (*Matter of Knowack*, 158 N. Y. 482, 488, 490; *Wilcox v. Wilcox*, 14 id. 576; *People ex rcl. Barry v. Mercein*, 8 Paige, 47, 55; *New York Foundling Hospital v. Gatti*, 203 U. S. 429, 438; 29 C. J. 108, § 101; *People ex rel. Converse v. Derrick*, 146 Misc. 73, 77, 78.) In the latter · case the court said (p. 77): "The State of New York stands in relation of *parens patriæ* to minor children in the State, and, representing the State, it is the function of the Supreme Court to determine the custody of such minors, and such determination is to be based solely on the welfare of the minors. This power of the State and function of the Supreme Court evidently transcends legislative action and contract between individuals."

There can, we think, be no question of the jurisdiction of the Supreme Court over its resident infant children, to be exercised in the interest of their welfare.

How is this jurisdiction to be exercised? The respondent concludes that the only relief available to a parent who · is not living in a state of separation from the other parent is to petition the Supreme Court and seek its equitable jurisdiction. He cites *Finlay v. Finlay* (240 N. Y. 429). That case does not sustain his conclusion. It held that a parent could not maintain an *action* against the other parent for custody of a minor child. It did not hold that the writ of habeas corpus would not lie. At page 432 the court said: "Except when adjudged as an incident to a suit for divorce or separation, the custody of children is to be regulated as it has always been in one or other of two ways: by writ of habeas corpus or by petition to the chancellor." Referring to section 70 of the Domestic Relations Law, the court continued (p. 433): " We do not need to determine whether there is today a remedy by habeas corpus available to either spouse irrespective of the statute * * *. If we were to assume with the plaintiff that the writ has been denied to him, there would remain his remedy by petition to the chancellor or to the court that has succeeded to the chancellor's prerogative."

Authority to proceed by habeas corpus was made a matter of statute by section 70 of the Domestic Relations Law, where the parents were living in a state of separation. That statute did not limit the common-law jurisdiction of the court or negative the right of a parent to proceed by habeas corpus, where the welfare of a child is involved, even though the parents are living together. In *People ex rel. Multer* v. *Multer* (107 Misc. 58) the Special Term entertained a habeas corpus proceeding initiated by the husband where he and his wife were temporarily at least residing together. *People ex rel. DeLaney* v. *Mt. St. Joseph's Academy* (198 App. Div. 75, 81; affd., 234 N. Y. 565) involved the custody of infants. Though not in name, it was in fact a contest between mother and father. The court said (p. 80): " The State has an interest in the children of parents residing within its boundaries. Its power is sovereign as to them. It is interested in their education and welfare," and (at p. 81): " Very reluctantly will courts of equity intervene in cases like this, where differences exist over the custody of children between parents living together. But the reluctance is not based on lack of jurisdiction or authority. While there is no statutory writ of habeas corpus that permits the court to determine the custody of infants, where the father and mother are living together, courts of equity have issued such writs under very similar conditions, where the right to custody was in question, from our early judicial history."

Furthermore, the parties are in court on a petition showing the facts. That respondent is brought in by a writ of habeas corpus rather than on a petition and order to show cause is not vital to the court's jurisdiction.

We hold that this court has jurisdiction in this proceeding. The final order may recite respondent's special appearance and objection to jurisdiction and provide that the objection is overruled with exception.