COE HOTTLE, Petitioner, v. DISTRICT COURT OF CLINTON COUNTY et al., Respondents.

No. 46289.

SEPTEMBER 21, 1943.

Smith, Swift & Maloney and G. W. Vander Vennet, all of Davenport, for petitioner.

John M. Rankin, Attorney General, Don Hise, Assistant Attorney General, and Carroll Johnson, County Attorney, for respondents.

MULRONEY, C. J.—The rulings of the trial court upon three motions to dismiss indictments, which are brought here for review in this action in certiorari, present the following question under section 14024, Code of 1939, Should an indictment against a defendant be dismissed because defendant was not brought to trial at the next regular term of court, even though it is shown that the defendant has been, since said indictment, and is now, in the state penitentiary serving a sentence for another crime? The trial court held it should not and overruled the motions to dismiss the indictments. This is a case of first impression in Iowa, though the question has been frequently decided by the courts of other states.

I. It is first argued that, because the defendant has never been arrested upon the warrant issued under the indict-

ment, he cannot, under the doctrine of State v. Judkins, 200 Iowa 1234, 206 N .W. 119, move to dismiss the indictment, as the court does not obtain any jurisdiction until such arrest.

Section 14024, Code, 1939, provides as follows:

"If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial at the next regular term of the court in which the indictment is triable after the same is found, the court must order it to be dismissed, unless good cause to the contrary be shown."

In the recent case of Pines v. District Court, 233 Iowa 1284, 1291, 10 N. W. 2d 574, 578, this court, speaking through Justice Bliss, held that such a statute as section 14024 "is a statutory definition of the term 'speedy trial' as conceived by the particular legislature enacting it, with the purpose in mind of more effectively enforcing the constitutional guaranty." (Citing cases.)

The constitutional guaranty is contained in section 10, Article I, of the Iowa Constitution providing:

"In all criminal prosecutions * * * the accused shall have a right to a speedy and public trial * * *."

In the Judkins case, the defendant, who was in a penitentiary, appeared by counsel, who filed a motion to quash an indictment for various grounds, among them being the ground that the grand jury that returned the indictment was illegally drawn because two grand jurors were from the same civil township. The trial court took cognizance of the motion, heard testimony, and entered an order setting aside the indictment on the ground the grand jury was not legally constituted. Upon appeal to the supreme court the case was affirmed upon the ground that the trial court could make such an order if in any manner it is brought to the notice of the trial court that the grand jury was not legally constituted. In .the course of the opinion [at page 1236 of 200 Iowa, page 120 of 206 N. W.] Justice Evans pointed out that the motion purporting to be filed on behalf of the defendant was unauthorized and nugatory for:

"No right of attack upon the indictment prior to defendant's arrest thereunder is conferred by the statute. * * * Nor

is there any basis for the court's jurisdiction over the person of the defendant in a criminal prosecution, except pursuant to warrant and an arrest thereunder.''

The court further stated:

''We hold, therefore, that the district court had no jurisdiction in this case over the person of the defendant, notwithstanding the appearance of counsel for him.''

It was only because the court could dismiss the indictment on its own motion that the ruling of the trial court was affirmed. Of course, the quoted statements and others of like effect in the Judkins case are dicta, for the court did affirm the action of the trial court in dismissing the indictments.

But the motions in the instant case can be distinguished from the motion in the Judkins case. There the defendant was attacking the indictment. Jurisdiction over his person would perhaps be necessary, for, as the court pointed out:

''Under the statute, the court, upon quashing an indictment, may order the case resubmitted to another grand jury, and may hold the defendant, pending such resubmission.''

Here there was no attack on the indictment. There could be no resubmission to a subsequent grand jury if the motions were sustained and the indictments dismissed. See Smith v. State, 168 Tenn. 265, 77 S. W. 2d 450. The defendant here, by his motions, is seeking the constitutional protection. As we have previously pointed out, the statute merely defines the term ''speedy trial'' as used in the constitution. The motion in the instant case is directed to the prosecution under a legal indictment wherein the movant asserts his constitutional right has been denied him. Judkins was asserting the indictment was defective. If he was correct, then he was never legally indicted. Since he had never been arrested, he was not in a position to assert the defect in the indictment. Here the ''accused'' in a legal prosecution for crime is asserting his constitutional rights of ''speedy trial'' have been invaded. No case has been brought to our attention where any court has held the constitutional right cannot be asserted until the defendant has been arrested, so long as he is

not a fugitive. On the contrary, we find the courts of other jurisdictions have, with complete unanimity, taken cognizance of such motions filed by the accused when he was serving a sentence for another crime. We hold the trial court did have jurisdiction to hear the motions filed in this case.

II. The general rule announced in 22 C. J. S. 724, 726, section 472, is as follows:

"It is generally held that the fact that accused is confined to the penitentiary on another charge is not good cause for a delay of the trial * * *."

With respect to the constitutional guarantee of the right of speedy trial, the rule as stated in 22 C. J. S. 713, 715, section 467, is as follows:

"(2) Persons within Guaranty. * * * One serving a sentence in the penitentiary is entitled to a speedy trial of other crimes with which he is charged."

See, also, annotation 118 A. L. R. 1037, where the general rule is stated as follows:

"The general rule, followed in the majority of the states and in the Federal courts, is that, under a constitutional provision guaranteeing to accused a speedy trial, and under statutes supplementing the constitutional provision and enacted for the purpose of rendering it effective, and prescribing the time within which accused must be brought to trial after indictment, a sovereign may not deny an accused person a speedy trial even though he is incarcerated in one of that sovereign's penal institutions under a prior conviction and sentence in a court of that sovereign."

In 15 Am. Jur. 13, 14, section 312, the text writer points out that a prisoner can be held for another offense, and states:

"Conversely, the principle has been applied to the failure of the government to try the accused within the time provided by the legislature in execution of the constitutional provision for speedy trials in criminal cases. In such a case it has been held that the imprisonment will not excuse the government from pro-

ceeding to trial on a subsequent indictment within the time limited by law and that its failure to do so entitles the prisoner to the allowance of a motion to discharge him from further prosecution on the second indictment.''

The reasons for the rule appear to be well stated in the decisions of the courts in many other states. In State v. Keefe, 17 Wyo. 227, 258, 98 P. 122, 131, 22 L. R. A., N. S., 896, 17 Ann. Cas. 161, it is stated:

''However, the purpose of the provision against an unreasonable delay in trial is not solely a release from imprisonment in the event of acquittal, but also a release from the harassment of a criminal prosecution and the anxiety attending the same; and hence an accused admitted to bail is protected as well as one in prison. Moreover, a long delay may result in the loss of witnesses for the accused as well as the state, and the importance of this consideration is not lessened by the fact that the defendant is serving a sentence in the penitentiary for another crime.''

This same quotation was approved in our opinion in Pines v. District Court, supra. It is pertinent here for Keefe was serving a sentence for another crime when he filed his motion to dismiss the indictment.

In In re Schechtel, 103 Colo. 77, 83, 82 P. 2d 762, 764, 118 A. L. R. 1032, the court cited a number of cases supporting the above rule, and stated:

''These cases are based upon the principle that even though the accused under a pending indictment may be confined to a penal institution of the same sovereign, he is, nevertheless, in the actual custody and control of that sovereign and by its authority and at its will may be produced in court for trial upon the untried charge and that a delay of the trial thereon beyond a reasonable time, as contemplated or fixed by constitutional or statutory provisions, entitled the accused to a dismissal of the pending indictment upon precisely the same basis as if he was unrestrained in his liberty. In other words, the circumstance that one is convicted and imprisoned by a given sovereignty does not alter the degree of diligence required of the prosecuting offi-

cials of the same sovereignty in giving him a speedy trial upon any subsequent criminal charge.''

In Arrowsmith v. State, 131 Tenn. 480, 486, 175 S. W. 545, 546, L. R. A. 1915E, 363, it is stated:

''The right of the State to prosecute him is not abridged or delayed by the fact that the accused is in such confinement, and by parity of reasoning his rights to be tried and to a speedy trial are not deferred until his period of sentence has been served or terminated.''

In the Arrowsmith case the court also quoted from State v. Keefe, supra, and stated:

''Indeed, the importance of that consideration is accentuated by the fact of the accused's imprisonment. He is less able on that account to keep posted as to the movements of his witnesses, and their testimony may be lost during his continued confinement. It would be a harsh construction of the clause, containing this guaranty, imbedded in our bill of rights, that would deny it application to those who stand most in need of it.''

In only two states has the contrary rule been upheld. These states are Illinois and Ohio, and in the Arrowsmith case the court pointed out that the Illinois case of Gillespie v. People, 176 Ill. 238, 52 N. E. 250, ''* * * is lacking in convincing argument,'' and the Ohio decision, State v. Brophy, 8 Ohio Dec. 698, stands alone in its imputation of ''civil death'' for a convict not under sentence for life.

We adhere to the rule of the majority that the right of an accused convict to a speedy trial may not be deferred until his period of sentence has been served or terminated, and ''good cause'' for a delay in the trial is not established by showing the accused has been serving a sentence for another crime.

III. The state had the right to produce the defendant before the Clinton county court for trial on the indictments there pending. It is true that there is no express statutory authority providing for the manner and means of production of an accused prisoner (who is not indicted for a crime punishable by life imprisonment or death) before a court to answer

another indictment. But the jurisdiction that is the accuser in the pending indictment is the one that is the master of his movements. The accused is in the actual custody of the state. In State v. Judkins, supra, this court speaking through Justice Evans stated [at page 1237 of 200 Iowa, page 121 of 206 N. W.] :

"But the court has power, under the statute, to have the defendant [serving a sentence in Fort Madison penitentiary] produced before it, for the purpose of conferring jurisdiction over his person and for the purpose of trial."

The same point was urged in Flagg v. State, 11 Ga. App. 37, 40, 74 S. E. 562, 563:

"We come, therefore, to the last point, which is the real ground upon which State's counsel seeks to uphold the judgment of the trial court. There is no statute of this State which expressly authorizes the court to take into custody and put on trial a person already serving a sentence under an indictment upon which he has previously been tried. * * * When a convict is serving a penal sentence he is in the custody of the State or its authorities. In a sense he is the property of the State; his labor belongs to the State. Having forfeited his right to freedom, he is completely under the dominion and control of the State, with no rights save those which the law in its humanity may accord him. It would indeed be remarkable if the State, which has full power to reach out and bring into court one of its citizens while in the full enjoyment of his liberty, could not find a process by which one of its convicts could be brought into court for any purpose for which his presence could lawfully be required. We have not the slightest doubt of the full and complete power of the courts to adopt appropriate measures to obtain a convict's presence in any proper case."

Indeed, the only state that does not seem to recognize the inherent power of the court to compel the production of a state penitentiary prisoner for trial on another indictment is Missouri. That state's supreme court, in State ex rel. Stevens v. Wurdeman, 295 Mo. 566, 584, 246 S. W. 189, 194, recognized this by there stating:

"Our rule that one under sentence cannot be taken from the penitentiary, and tried upon another charge, is against the weight of authority. In fact we seem to stand alone on that doctrine."

As pointed out in Rigor v. State, 101 Md. 465, 471, 472, 61 A. 631, 633, 634, 4 Ann. Cas. 719, if we were to hold that an accused in a penitentiary could not be produced by the state to be tried upon another indictment, we would be virtually holding that the prisoner in the penitentiary enjoys "* * * an immunity from trial merely because he is undergoing punishment on some earlier judgment of guilt." In this case the court held:

"A writ of habeas corpus will bring a convict from the penitentiary into Court, not for the purpose of having the cause of his detention inquired into, but either because he may be needed as a witness, or because a pending indictment against him ought to be heard and determined."

In this Maryland case the habeas corpus writ issued "* * * at the instance of the state's attorney * * *."

Although the writ of habeas corpus is usually used to test the legality of the imprisonment of the petitioner, it may properly be brought for other relief. It may be employed to test a father's claimed superior rights of custody over a child as against the legally appointed guardian of the child. State ex rel. Patton v. Benning, 193 Iowa 662, 187 N. W. 435. We do not mean to hold that the proceeding for a writ of habeas corpus is necessary in order to have a prisoner in the state penitentiary produced for trial upon another indictment. The state has custody and control over the prisoner. It is charged by the constitution to bring the prisoner to speedy trial upon the pending indictment. The prisoner should be produced for trial upon proper order of the trial judge before whom the indictment is pending. We do mean that refusal on the part of the prison authorities or warden to so produce the defendant prisoner would be grounds for the issuance of the writ of habeas corpus to compel his production for trial. See, also, People v. Corrado, 150 Misc. 787, 270 N. Y. Supp. 235; Thomas v. People, 67 N. Y. 218.

The right to the writ of habeas corpus is guaranteed by the

constitution. Although the procedure to obtain the writ is statutory, the right to the writ is that which existed at common law at the time the constitution was adopted. State ex rel. Attorney General v. Davenport, 125 Okla. 1, 256 P. 340; People ex rel. Sisson v. Sisson, 153 Misc. 434, 275 N. Y. Supp. 299; Porter v. Porter, 60 Fla. 407, 53 So. 546, Ann. Cas. 1912C, 867; 29 C. J. 10, 11, section 4.

At common law there were many forms of the writ of habeas corpus, among them being habeas corpus ad testificandum—literally, "You have the body to testify"—used to bring up a prisoner detained in any jail or prison to give evidence before any court of competent jurisdiction. See 3 Blackstone Comm. 130. There was also habeas corpus ad respondendum—literally, "You have the body to answer"—used to bring up a person in confinement to answer a criminal charge. See 3 Blackstone Comm. 129.

IV. In the case of Pines v. District Court, supra, at page 1296 of 233 Iowa, page 581 of 10 N. W. 2d, we overruled the case of Davison v. Garfield, 221 Iowa 424, 265 N. W. 645, and reestablished our former rule, that is the clear weight of authority:

"* * * that a demand for trial, resistance to postponement, or some other effort to secure a speedy trial must be made by one charged with a crime, by indictment or information, to entitle him to a dismissal of the charge, under either the constitutional or statutory provisions involved herein."

The authorities are divided upon whether the constitutional and statutory guarantees of speedy trial are waived by failing to demand trial when the defendant is serving a sentence for another offense. In Fulton v. State, 178 Ark. 841, 845, 12 S. W. 2d 777, 778, the court stated:

"* * * as it is stipulated that appellants have not been brought into open court and put upon trial or given an opportunity to demand a trial, we hold that these men, who have had no opportunity to demand a trial, should not be regarded as having waived this valuable right."

In State v. McTague, 173 Minn. 153, 154, 155, 216 N. W. 787, 788, the court first stated:

914

"The suggestion that defendant could not be tried because he was in state prison is without substance. The state that holds him in prison is the same state that prosecutes these indictments. His imprisonment could not be used by him as an excuse to avoid trial, much less the state."

But the Minnesota Supreme Court held in this case:

"The spirit of the law is that the accused must go on record in the attitude of demanding a trial or resisting delay. If he does not do this he must be held, in law, to have waived the privilege. Until he has so acted the state is not called upon to establish the existence of the statutory 'good cause.' State v. Artz, 154 Minn. 290, 191 N. W. 605; State v. Dinger, 51 N. D. 98, 199 N. W. 196, and cases cited; 44 L. R. A. (N. S.) 871, note. Upon the record defendant was not entitled to the relief sought."

The rule of the Minnesota Supreme Court is probably the majority rule. In 22 C. J. S. 719, section 469, the general rule is:

"The accused must demand a trial or take other affirmative action to obtain a trial to be entitled to a discharge for delay. The demand must be made in the proper manner. A demand is waived by any conduct evidencing an intention not to insist on it."

By a note to this rule the author states:

"The text rule applies to persons serving sentence on other charges."

We hold that the rule adopted by us in Pines v. District Court, supra, that the accused must make a demand for trial, resistance to postponement, or some other effort to secure a speedy trial applies even though he is in the penitentiary serving a sentence for another crime. It is conceivable that a defendant might not desire a trial upon the new indictment while he is a prisoner. He might well reason that such a trial while he is a convict and under guard in the courtroom might be prejudicial to him.

The record shows that defendant on the 13th day of October 1941, pleaded guilty in Scott county to two informations charging him with embezzlement and was sentenced to the state penitentiary at Fort Madison for a term of five years on each, said sentences to run concurrently. His attorney, knowing that three indictments charging the defendant with embezzlement had been returned by the Clinton county grand jury on September 24th, called the county attorney in Clinton "with respect to a plea." The attorney testified that he was informed by the county attorney that if Coe Hottle would appear as soon as possible, and if he would go in before Judge Scott and enter a plea of guilty as to one indictment, the other two would be dismissed and the sentence out of both counties would be dismissed and the sentence out of both counties would run concurrently. The county attorney testified concerning the telephone call but stated he made no agreement concerning the plea of guilty to one indictment and the dismissal of the other two. He stated if Hottle wanted to plead he would have to plead to all indictments but he would have no objections if the court made all the sentences concurrent with the Davenport sentence. The defendant's attorney and two deputy sheriffs from Scott county took the defendant, Coe Hottle, to Clinton, arriving before noon of October 13th. There the sheriff of Clinton county read the warrants to Coe Hottle and he was taken to the county attorney's office in Clinton. From there he was taken to the judge's chambers, where he remained outside while his attorney and the county attorney talked to the judge. The judge informed them that he was in the midst of the trial of a serious rape case, and that he wanted to give it all his attention, and that they should come back after lunch. After lunch he said he was still too busy. Hottle was then taken back to Davenport and from there he was taken the next day to the penitentiary at Fort Madison.

This record of events that transpired on October 13th is not sufficient to constitute an effort on the part of petitioner to secure a speedy trial. He was merely attempting to secure a favorable disposition of his case under a supposed or alleged agreement between his attorney and the Clinton county attor-

ney. The record does not show any demand made by defendant or his attorney during the year and five months he was in the penitentiary before bringing this action. We conclude the trial court was right in overruling the motions to dismiss the indictments and the writ should be annulled.—Writ annulled.

BLISS, GARFIELD, MILLER, and HALE, JJ., concur.

MANTZ and SMITH, JJ., concur in result.