Argued April 9, reversed July 29, 1959

# STATE OF OREGON *v.* CROSBY

342 P. 2d 831

*Richard R. Carney*, Portland, argued the cause for appellant. On the briefs were Tanner & Carney, Portland.

*John D. Nichols*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General,

and Peter S. Herman, Assistant Attorney General, Salem.

Before McAllister, Chief Justice, and Lusk, Warner, Sloan and Millard, Justices.

LUSK, J.

This is an appeal by the defendant in a criminal case from an order denying his motion to dismiss the indictment. The motion was based on ORS 134.120, hereinafter set out, and on the provision of Article I, Section 10 of the Oregon Constitution, which guarantees the right to trial "without delay."

On May 29, 1957, the Multnomah County Grand Jury returned an indictment charging the defendant with the crime of false swearing, denounced by ORS 162.140. On June 4, 1957, the defendant filed motions to set aside and quash the indictment. These motions were denied by the court on June 13, 1957. On June 18, the defendant filed a demurrer to the indictment. The demurrer was argued orally on August 30, and memoranda thereafter filed by the parties, the last on September 9. There was no further action in the case until October 8, 1958, some thirteen months later, when the court rendered an opinion holding that the demurrer was not well taken. On October 13, 1958, an order over-ruling the demurrer was entered. On October 21, the defendant entered a plea of not guilty. On November 3, defendant filed his motion to dismiss, which was denied the same day. This appeal was taken pursuant to ORS 138.040.

ORS 134.120 provides:

"If a defendant indicted for a crime, whose trial has not been postponed upon his application or by his consent, is not brought to trial at the next term

of the court in which the indictment is triable after it is found, the court shall order the indictment to be dismissed, unless good cause to the contrary is shown."

During the period with which this case is concerned, the applicable statute provided:

"The terms of the circuit court in the fourth judicial district shall be held in Multnomah County on the first Monday of each month except July and August."①

Thus, twelve terms of the circuit court for the Fourth Judicial District intervened between the May, 1957, term in which the indictment was "found" and the October, 1958, term in which the defendant pleaded not guilty, and ten such terms between the time when the demurrer to the indictment was submitted to the court and the decision thereon, followed by the plea of not guilty.

Relying on the construction that appears to have been placed on ORS 134.120 by this court, the state contends that "the only express statutory procedure provided by the legislature for defendants to vindicate their rights to a speedy trial, namely ORS 134.120, is limited to those delays which occur after an indictment has become triable." An indictment, it is said, is not triable until the case is put at issue on a question of fact, i.e., by a plea of not guilty or of former conviction or acquittal, ORS 136.010; hence, under this view, none of the delay between the return of the indictment and the plea is included within the purview of the statute.

---

① At the 1959 session of the legislative assembly, the statutes of Oregon relating to terms were completely revised and amended by Oregon Laws 1959, ch 638. Section 16 of this chapter provides:

"134.120. If a defendant indicted for a crime, whose trial has not been postponed upon his application or by his consent, is not brought to trial within a reasonable period of time, the court shall order the indictment to be dismissed."

The state apparently concedes that there might be a delay in bringing a case to trial which, entirely apart from the statute, would be deemed a violation of the constitutional right of the accused to a speedy trial and would warrant the court in dismissing the indictment. But as to this, the state argues that an order based on that ground is not appealable and can only be reviewed on appeal from a conviction; that the delay in this case, considerable though it may have been, was not vexatious, capricious, or oppressive, did not prejudice the defendant, and, in any event, that his constitutional right as distinguished from his statutory right was waived by failure to demand a trial. We do not reach the constitutional question, as we are of the opinion that, under the statute properly construed, the motion to dismiss the indictment should have been allowed.

It must be conceded that there is language in some of our opinions and at least one decision which tend to support the state's construction of ORS 134.120. Thus, in a specially concurring opinion in *Johnston v. Circuit Court, Mult. Co.*, 140 Or 100, 106, 12 P2d 1027, Mr. Justice RAND said: "Until that date, the criminal case was not at issue and could not be tried, and, therefore, did not come within the provisions of Section 13-1602, Oregon Code 1930 [ORS 134.120]." In *State v. Chadwick*, 150 Or 645, 649, 47 P2d 232, the court, in an opinion by Mr. Justice CAMPBELL, said:

> "The first question to be determined is, What is the next term of court, after an indictment has been returned, in which a case is triable? A criminal case may not be tried until it is at issue. It is put at issue on a question of fact by a plea of 'not guilty', or of former conviction: Oregon Code 1930, § 13-901."

In this fashion, the court assumed that the word "triable" was synonymous with, or at least that it includes, "at issue," and that its effect as used in the statute was to defer the running of the time within which the accused must be brought to trial until he had entered a plea of not guilty or of former conviction (and, it might be added, of former acquittal. ORS 136.010.). The court then said that because a motion for a continuance "until the next regular term" had been made by the defendant and granted, the case was not "triable" until that term. As, however, there was no motion for continuance thereafter, the case was "triable" during succeeding terms, and the failure of the state to bring the case to trial was ground for dismissal. But, as it seems to us, the obvious reason why the defendant could not complain of delay which he had requested was that, by its very language, the statute affords protection only to a defendant "whose trial has not been postponed upon his application or by his consent."

The *Chadwick case* was cited in *State v. Ellison*, 209 Or 672, 307 P2d 1050. In that case it appears that an indictment was returned during the October, 1955, term of court which ended January 15, 1956. On January 12, 1956, the defendant was given until January 17 in which to plead, and he entered his plea of not guilty on that day. He was not tried in the January term which ended April 15, 1956, but in the April term. A general order of continuance of pending cases was entered just prior to the expiration of the January term. The court, in an opinion by Mr. Justice KESTER, which sustained the circuit court's denial of the defendant's motion to dismiss, said:

"Since defendant had not entered his plea by the end of the October, 1955, term, he cannot com-

plain of the continuance to the January, 1956, term, whether (1) his failure to plead be regarded either as good cause or as consent to postponement under ORS 134.120; or (2) the case be regarded as not 'triable' until the term in which the plea is entered, as indicated in State v. Chadwick, 150 Or 645, 649, 47 P2d 232. The right to a speedy trial can be waived (see Anno. 129 ALR 572), and we hold that it was waived so long as defendant failed to plead."

While the opinion referred to the dictum of the *Chadwick case,* it should be observed that the decision was placed squarely on the ground of waiver.

Other expressions in our opinions, in cases, however, which did not directly involve the question under consideration, indicate a different interpretation. In *State v. Breaw,* 45 Or 586, 78 P 896, the court stated the question thus:

"The defendant's position is that under the statute he was entitled to a dismissal of the information if he was not tried at the same term of court at which it was found, unless good cause to the contrary was shown by the prosecution, and that such cause should appear in the record."

In holding against this contention, the court, speaking through Mr. Justice ROBERT S. BEAN, said:

"The language is that the court must order the indictment dismissed if the trial has not been postponed on the application or by the consent of defendant, unless he is brought 'to trial at the next term of the court in which the indictment is triable, after it is found,' etc., which clearly means the next following term, and not the current one."

In *State of Oregon v. Kuhnhausen,* 201 Or 478, 495, 266 P2d 698, 272 P2d 225, Mr. Justice TOOZE said: "It remains for us to discuss what constitutes 'good cause' for a continuance of a criminal trial *beyond the court*

*term next following the term in which the indictment is returned.*" (Italics added.) In the same case, on rehearing, Mr. Justice BRAND said, at page 518: "We hold that the statute requiring dismissal for failure, without good cause, to prosecute at the *next term of court after the indictment*" etc. (Italics added.) Again, at page 523, Mr. Justice BRAND said: "Turning now to the provisions of the statute, we all agree that if a court, *without cause,* fails to bring an imprisoned defendant to trial at the *next term of court after the indictment,* he loses all discretion to continue the case." (Second italics added.) And in *State v. Swain,* 147 Or 207, 214, 31 P2d 745, 32 P2d 773, 93 ALR 921, Mr. Justice ROSSMAN, speaking for the court, said:

"\* \* \*· It is apparent that the reason the defendant was not tried at *the term of court immediately following the return of the indictment* against him was due to no fault of the state," etc. (Italics added.)

So far as we are able to ascertain from our examination of the briefs in prior cases, the question of the proper construction of the word "triable" in ORS 134.120 has never been presented to the court in argument until this case. Now, counsel for the defendant have vigorously attacked the significance given to that word in the *Chadwick case.* They argue that the word "triable" has nothing to do with the state of the pleadings, but was used to identify the court whose term is to be considered as "the next term" after the finding of the indictment. The terms of court in the various counties of this state vary, and so it was necessary for the legislature to indicate in some way the term which would control in the particular case, and this was accomplished by referring to "the next term *of the court*

*in which the indictment is triable* after it is found."
(Italics added.)

■ We are of the opinion that the foregoing is the correct construction of the statute, and that what was said in the *Chadwick* case and other decisions to the contrary ought to be over-ruled. The intent of the legislature was to prescribe a fixed time within which a defendant must be brought to trial, measured by the term of court in which the indictment was returned and the next succeeding term; not to make the starting point the arraignment and plea, which might occur soon or late after indictment according to varying circumstances. The word "triable" in this context does not mean "when the indictment is at issue upon a question of fact,"[2] or "when the case is ready to be tried"; rather, it refers to the court in which the case is pending or which has jurisdiction of the case.[3] So in *William Jackson v. The State of Florida*, 33 Fla 620, 15 So 250, the court, in construing a statutory provision that "All offenses triable in said court shall be prosecuted upon information" etc., held that the phrase "triable in said court" meant "all offenses of which such court has jurisdiction * * *."

■ We said in the Chadwick case, "it is equally the duty of the prosecutor to see that the defendant is

---

[2] ORS 134.120 was Section 320 of the original Criminal Code adopted in 1864. See Deady's Code, p 382. When the authors of the code desired to express the idea of an indictment "at issue upon a question of fact" they used those very words, not the dubious word "triable." See Section 145, Deady's Code, p 358, now ORS 136.070.

[3] The comparable phrase in statutes of some of the states is "term of the court in which the cause is pending." General Statutes of Kansas Ann., 1949, § 62-1432; Vernon's Ann. Missouri Statutes, § 545.900; Revised Statutes of Nebraska, 1943, § 29-1203; Virginia Acts of Assembly, 1950, ch 346; Wyoming Compiled Statutes Ann., 1945, § 10-1313.

The Colorado statute uses the phrase, "having jurisdiction of the offense." Colorado Revised Statutes, 1953, § 39-7-12.

Besides the statutes of New York and Iowa, referred to in the text, infra, the word "triable" is used in the following statutes: Idaho Code, § 19-3501; Nevada Revised Statutes, § 178.495; North Dakota Revised Code, § 29-1801; Oklahoma Statutes, Title 22, § 812; Tennessee Code Ann., § 40-2102.

arraigned and enters a plea and speedily brought to trial as it is to charge him with the offense in the first place." 150 Or at 650. The whole business of indictment, arraignment and bringing to trial is in the hands of the prosecutor and the court, not the defendant, and the meaning of the statute is that, except where the delay is excused, the prosecution is under a duty to finish this business at the next term after indictment or the indictment will be dismissed. In the few cases from other jurisdictions which have passed upon the question, the courts have so held.

Iowa's statute governing this subject is substantially identical with Oregon's. It contains the phrase, "at the next regular term of the court in which the indictment is triable." Section 14024, Code 1939. In *Hottle v. District Court*, 233 Iowa 904, 11 NW2d 30, the Supreme Court of Iowa held that the guarantee of a speedy trial under the statute applied to an indicted defendant who, at the time, was serving a sentence for another crime in the state penitentiary. Cf. *State v. D'Autremont*, 212 Or 344, 349, 317 P2d 932. The defendant had never entered a plea to the indictment. In *McCandless v. District Court*, 245 Iowa 599, 61 NW2d 674, the lower court, in denying a motion to dismiss the indictment, had stated that he "had very serious doubts if the statutes involved begin to run until after arraignment." The Supreme Court, in passing upon this question, said:

"I. The statutory period is applicable whether the accused is arrested and arraigned or not. We discussed this matter in Hottle v. District Court, 233 Iowa 904, 11 NW2d 30, and held that while the court did not have jurisdiction over the person of the accused until he was served under the indictment, the court could on its own motion dismiss the indictment in a proper showing under these sections.

We discussed there the contention of the state that, because the accused had never been arrested upon warrant issued under the indictment, he could not move to dismiss the indictment for the reason that the court does not obtain jurisdiction until the arrest, under the decision in State v. Judkins, 200 Iowa 1234, 206 NW 119. We further distinguished between that situation and cases involving a 'speedy trial,' and concluded while the rule in the Judkins case was correct, it did not apply to a motion to dismiss an indictment for failure to provide a speedy trial. We conclude, therefore, the motion to dismiss the indictment was proper under the considered statutes regardless of whether or not there had been an arrest under the indictment." 245 Iowa at 603-604.

There was a dissenting opinion, but on this point the dissenting judge agreed with the majority, saying: "The majority opinion, following *Hottle v. District Court*, 233 Iowa 904, 11 NW2d 30, properly holds the statutory period begins to run from the time of finding the indictment; arraignment is not necessary to start it." 245 Iowa at 611.

Section 668 of the New York Code of Criminal Procedure is also substantially in the language of ORS 134.120. In *People v. Wilson*, 169 NYSupp2d 285, the Appellate Division of the Supreme Court of New York held that the trial court had erroneously denied a motion to dismiss the indictment interposed by the defendant, who was in a New York prison at the time of his indictment. A twenty-one months' delay between the filing of the indictment and the defendant's arraignment for pleading was held to justify dismissal of the indictment. *People v. Exter*, 158 NYSupp2d 60 (Queens County Court) is a similar decision. And in *People v. Prosser*, 309 NY 353, 130 NE2d 891, 57 ALR 2d 295, the Court of Appeals of New York spoke of the

statute as "The speedy trial guarantee, preventing undue delay between the time of indictment and trial * * *."

■ During the time with which this case is concerned, as we judicially know, an unusually large number of criminal cases, prosecuted under the direction of the Attorney General, were pending in the Multnomah County Circuit Court, and the Presiding Judge of that court, the Honorable Charles W. Redding, was bearing a heavy burden of work incident to these prosecutions. The record shows that the filing of the last brief on the demurrer was not called to Judge Redding's attention at the time, and he was led to believe, by an entirely innocent statement of an Assistant Attorney General, that "nothing was at issue" in September, 1957. It was not until September, 1958, that Judge Redding learned that all the briefs upon the demurrer had been filed. While these facts sufficiently show that there was no conscious neglect of duty on Judge Redding's part, they do not help the state's position, for if the delay is not attributable to the defendant, the statute makes allowance of the motion to dismiss imperative.

Under the proper construction of the statute, hereinabove announced, the indictment having been returned in the May, 1957, term of court, the defendant was entitled to be tried during the June term unless he applied for or consented to a postponement or unless good cause was shown for the delay. By filing a demurrer to the indictment on June 18, 1957, the defendant, in effect, consented to a postponement of the trial until the next succeeding term, to-wit, the September term, for he was charged with knowledge that it might reasonably take more time than was left in the June term to present the demurrer in argument and obtain

a decision thereon from the court. By September 9, 1957, the demurrer had been argued orally, briefs had been filed, and the case submitted to the court.

It is said in 22 CJS 224, Criminal Law § 471: "The effect of a continuance at the request of, or with the consent of, accused is to toll the statute providing for dismissal or discharge if accused is not tried within the stated time, or to exclude from the computation the term at which such continuance is granted." See, also, idem 729, § 473. The CJS statement is supported by *State v. Stanley*, 179 Kansas 613, 296 P2d 1088; *State v. Dewey*, 73 Kansas 735, 88 P 881; *State v. Pierson*, 343 Mo 841, 123 SW2d 149; *State v. McIntosh*, 82 WVa 483, 96 SE 79. Cf. *State v. Stilwell*, 100 Or 637, 640-641, 198 P 559. Here the postponement to which the defendant gave his "consent" may be said to have included a reasonable time for the judge to study the legal questions raised by the demurrer and to render his decision thereon, having due regard to the nature and difficulty of those questions and the multifarious other duties of the Presiding Judge of the Circuit Court for Multnomah County. We need not attempt to determine with any degree of exactitude what a reasonable time would have been; it is sufficient to say that thirteen months was unreasonable. Ten terms went by after the term in which the demurrer was submitted for decision, without a trial. The defendant, therefore, was entitled to be discharged unless it is to be said that a demurrer to the indictment is, ipso facto, a dilatory motion and that all delay in the proceedings resulting from its filing is attributable to the defendant. The Attorney General has not taken this position in his brief, though it would appear to have the support of some courts whose decisions are digested in the annotations in 129 ALR 572, 577-588, and 57 ALR2d

302, 314-318. Obviously, where delay is caused by the filing of dilatory pleas and motions on behalf of the defendant, he is not entitled to be discharged on account thereof. See *State v. Stilwell*, supra, and *Johnston v. Circuit Court, Mult. Co.*, supra. In the former case it was held that where the court, in response to an affidavit of prejudice, erroneously granted a change of venue, the consequent delay should be laid at the door of the defendant himself. The court said, 140 Or at 100: "The defendant was first in the field asking for a delay. He filed an affidavit asking for a continuance, to procure the attendance of a witness, and when this was over-ruled he filed the affidavit of prejudice." It is a well-known fact that the affidavit of prejudice is not infrequently used as a means of obtaining delay, and it is evident from the opinion in the case, which was written by Mr. Justice McBRIDE, that the court thought that this was the purpose of the motion in this instance. In the *Johnston case*, the court said, 140 Or at 104: "Where the defendant is first in the field asking for a delay by request for time or a motion for continuance or a change of place of trial, which resulted in delays, the indictment should not be dismissed," citing the *Stilwell case*. Neither of these decisions is authority for the proposition that a demurrer as such is a dilatory motion. It may be so in a particular case. It is, nevertheless, procedure prescribed by statute for testing the sufficiency and legality of the indictment, ORS 135.630, 135.640, and in appropriate cases an attorney for the accused would be delinquent in his duty to his client if he failed to file such a pleading. In the present instance, there is nothing in the record to indicate that the demurrer was filed merely for delay, and the fact that the court rendered a nine-page memorandum opinion in dispos-

ing of the demurrer suggests the seriousness of the questions raised by it.

In *Ex parte Bracey*, 82 WVa 69, 95 SE 593, an indictment was returned at the March term of court and demurred to within two days thereafter. Pursuant to a stipulation, the defendant promptly filed a brief, but the state failed to file its brief until the next term, which began in May. The court decided the demurrer in September, after the July term had intervened. The trial court denied a motion to dismiss the indictment. The statute provided for the discharge of the defendant "if there be three regular terms of such court, after the indictment is found against him," without a trial. The state contended that the failure to try the petitioner at the March, May and July terms of court was excused because of the demurrer to the indictment. The court, after distinguishing cases relied on by the state, said:

"* * * Petitioner did not institute, or was not responsible for, any proceeding of any kind, either in the court in which the indictment was pending, or in any other place, which necessitated continuing his case. It cannot be said that his challenge of the sufficiency of the indictment by demurrer makes him responsible for the delay of the court in passing upon that demurrer, or for the delay of the state in presenting matter to support its indictment. The state must be as ready to make good its indictment as matter of law when the same is challenged by demurrer, as to make it good in fact when challenged by a plea of not guilty. We think it would be unreasonable and unconscionable to charge to the petitioner the delay of the court for more than six months in passing judgment upon his demurrer, when he did nothing to prevent an immediate judgment thereon."

The supreme court reversed and ordered the indictment to be dismissed.

In *Zehrlaut v. State*, 230 Ind 175, 102 NE2d 203, the defendant filed a motion to quash the indictment. Under Indiana law, such a motion performs the same function that a demurrer performs in a civil case. The statute makes it mandatory to try a criminal case within three terms of court after the term at which "a recognizance was first taken." More than three terms elapsed without a decision on the demurrer, and the defendant moved for a dismissal, which was denied by the trial court. The supreme court reversed on appeal. The court held that the motion to quash was not a dilatory motion. "It is an essential part," the court said, "of the procedural law of the state in criminal cases, and its filing by the defendant may reasonably be anticipated by the state when a criminal charge is filed." The defendant was under no duty to make any demand of the state for a speedy trial. "That demand," the court said, "is effectively made for him by the constitution and its implementing statute and this demand thus made the state may not ignore without incurring the penalty provided by the statute."

■ It is also the law of Oregon that the defendant is under no duty to demand a speedy trial in accordance with the statute. *State v. D'Autremont*, supra; *State v. Chadwick*, supra.

■ In our opinion, the West Virginia and Indiana decisions above cited correctly state the law applicable to this case. We can add nothing to the force of the reasoning employed in those cases. Denial of the defendant's motion to dismiss the indictment, as we view it, withheld from him a right which the statute gave him. It results that the judgment must be reversed with directions to allow the motion.