Submitted October 1, affirmed November 6, 1957, petition for
rehearing denied January 8, 1958

# STATE OF OREGON *v.* D'AUTREMONT

(5 cases)

317 P. 2d 932

Kelly & Kelly, Medford, for appellant.

Thomas J. Reeder, District Attorney, and A. Allan Franzke, Deputy District Attorney, Medford, for respondent.

LUSK, J.

These are consolidated appeals by the defendant, Hugh D'Autremont, in five cases from orders of the

circuit court denying motions to dismiss the indictments in such cases for failure of the state to bring them to trial within the time required by law.

On November 23, 1923, six indictments were returned against Roy D'Autremont, Ray D'Autremont, and Hugh D'Autremont, alias C. E. James. In four of these indictments the defendants were charged with first degree murder of the following persons, respectively, Charles E. Johnson, Marvin Seng, Elvyn Earl Dougherty, and Sidney Lloyd Bates; in one with stopping the operation of a railroad train with intent to steal therefrom; and in another with attempting to break and enter a railroad car in which United States mail, lawful money of the United States, and other personal property were kept with intent to steal therein. The date of the alleged crimes was October 11, 1923. They were all incident to a train robbery.

The several motions to dismiss were filed December 27, 1955. They state, and it is not disputed, that the defendant, Hugh D'Autremont, to whom we shall hereinafter refer as the prisoner, was arrested during January 1927 and was tried and convicted of first degree murder with recommendation of life imprisonment (in the case charging the murder of Charles E. Johnson), and that he has ever since been confined in the Oregon state penitentiary, but that he has not been brought to trial on any of the five remaining indictments. In a memorandum appended to each motion counsel for the prisoner states that the pending indictments "have been used to forestall the defendant's receiving consideration for parole under the laws of Oregon" and that the trial of the prisoner "has not been postponed upon his application or by his consent."

In response to these motions the district attorney filed a motion in each case for an order correcting and

supplying an omission in the record in order to show that the trials of the pending cases were postponed by agreement of the three defendants. This motion was supported by the following affidavit executed April 30, 1956.

"I, TENNYSON JEFFERSON, being first duly sworn on oath, do hereby depose and say: that in my capacity as a United States Post Office inspector I was present on June 23, 1927, when Roy D'Autremont, Ray D'Autremont and Hugh D'Autremont each made written confessions admitting the holdup of Southern Pacific train No. 13 on October 11, 1923, and the murder of four trainmen and a railway postal clerk. I personally witnessed the signing of the confessions by the above named D'Autremont brothers. At the time the confessions were made, Hugh D'Autremont had already been convicted by a trial jury for the crime of first degree murder on one of the outstanding murder indictments. It was agreed by and between Mr. Charles Riddiford and myself representing the post office department and the above named Roy D'Autremont, Ray D'Autremont and Hugh D'Autremont at the time the confessions were given and signed that we would recommend to the court that Ray and Roy be permitted to enter pleas of guilty to second degree murder on one of the remaining outstanding murder indictments and be sentenced to life in the Oregon State Penitentiary and thus avoid being exposed and subjected to a possible death penalty on a trial of the outstanding murder indictments. At that time it was explained to Hugh, Ray and Roy D'Autremont that under ordinary circumstances a person sentenced to life imprisonment in the Oregon State Penitentiary was eligible for release consideration after about seven and one-half years. The three D'Autremont boys agreed at the time they signed their confessions that they were to spend the rest of their natural lives in the Oregon State Penitentiary and that the remaining outstanding indict-

ments against them would not be prosecuted, but would be kept pending for the sole purpose of assuring that they and each of them would spend the rest of their natural lives in the penitentiary, and Ray D'Autremont, Roy D'Autremont and Hugh D'Autremont and each of them then and there agreed and consented that the indictments should remain standing, pending and unprosecuted in order to assure that they would spend the rest of their natural lives in the penitentiary and not thus be eligible for release consideration.

"That said agreement as herein stated was presented to the Circuit Court for Jackson County, Oregon, sitting in the person of the Hon. Circuit Judge C. M. Thomas, that said Circuit Court approved of said agreements and pursuant thereto, and upon the oral motion of Mr. Newton Chaney, the then district attorney for Jackson County, Oregon, the court permitted the defendants Ray D'Autremont and Roy D'Autremont to enter pleas of guilty to the lesser and included offense of second degree murder, and thereafter sentenced them to life terms in the Oregon State Penitentiary.

"That I am advised that the agreement and court action hereinabove referred to are not reflected in the record of said Circuit Court, and that this affidavit is made for the purpose of setting forth the facts as they occurred and the action of the court in connection therewith.

"TENNYSON JEFFERSON"

A copy of the motion and supporting affidavit was served on the attorney for the prisoner on May 3, 1956. The averments of the affidavit have never been controverted and no objections to entry of the nunc pro tunc order were filed by the prisoner. On June 9, 1956, the court entered an order in each case which, after reciting the facts set forth in the Jefferson affidavit, and that the motion had been served on the attorney

for the prisoner and that no appearance or objection had been filed by him, concluded:

"* * * it is hereby

"CONSIDERED and ORDERED that the within entitled action and the trial thereon be, and it hereby is continued and postponed for an indefinite period of time upon the express consent and agreement of the above named defendants, and each of them. It is further

"CONSIDERED and ORDERED that this order be entered of record herein nunc pro tunc as of the 23rd day of June, 1927, for the purpose of correcting and supplying an omission in the record of the court's action actually had at that time but omitted through inadvertence or mistake."

The prisoner contends that the nunc pro tunc order was improperly entered because no such order was made by the court at the time that the pleas of guilty of Roy and Ray D'Autremont were received, and because the agreement described in the affidavit of Tennyson Jefferson is against public policy and void.

In our view, the decision does not depend upon the validity *vel non* of the nunc pro tunc order, but upon the question whether the prisoner has consented to the postponement of the trial of the pending cases.

■ In passing it should be observed that by the great weight of authority imprisonment on another charge does not constitute sufficient cause for failure to comply with statutory provisions prescribing the time within which a defendant indicted for crime must be brought to trial. 14 Am Jur 858, Criminal Law § 134; 22 CJS 718, Criminal Law § 468; *Arrowsmith v. State,* 131 Tenn 480, 175 SW 545, LRA 1915E 363; *State v. Keefe,* 17 Wyo 227, 98 P 122, 22 LRA (ns) 896, 17 Ann Cas 161; Annotation, 118 ALR 1037.

■ The constitution guarantees to one accused of crime the right to a speedy trial. Oregon Constitution, Art I, § 10. To carry out and make effective the constitutional guarantee (*State v. Kuhnhausen,* 201 Or 478, 515, 266 P2d 698, 272 P2d 225) the legislature has provided:

"If a defendant indicted for a crime, whose trial has not been postponed upon his application or by his consent, is not brought to trial at the next term of the court in which the indictment is triable after it is found, the court shall order the indictment to be dismissed, unless good cause to the contrary is shown." ORS 134.120.

"If the defendant is not indicted or tried, as provided in ORS 134.110 and 134.120, and sufficient reason therefor is shown, the court may order the action to be continued from term to term and in the meantime may discharge the defendant from custody on his own undertaking of bail for his appearance to answer the charge or action at the time to which the same is continued." ORS 134.130.

The constitutional requirement of a speedy trial has always been considered as a guarantee only against arbitrary and oppressive delays. *State v. Kuhnhausen,* supra, 201 Or at 520. Contrary to the general rule (22 CJS 719, Criminal Law § 469), in this state the duty does not rest upon the accused to call his case for trial or to insist that it be set for any particular time; that duty devolves upon the state. *State v. Chadwick,* 150 Or 645, 650, 47 P2d 232. The right may be waived, however. *State v. Kuhnhausen,* supra; *State v. Chapin,* 74 Or 346, 144 P 1187. And the accused has no right to demand the dismissal of an indictment where the trial has been postponed upon his application or by his consent. ORS 134.120.

On June 23, 1927, the prisoner had been found guilty of murder in the first degree and either had been

sentenced or was about to be sentenced to imprisonment for life. Omitting reference to the indictments for attempted theft and burglary of a train, there were still pending against him three indictments for first degree murder. The alternative with which he was confronted, as presented to him by the prosecution, was either to stand upon his right to a speedy trial on these charges with the possibility that on one or more of them he would receive the death penalty, or to allow the indictments to "remain standing, pending and unprosecuted in order to assure that they would spend the rest of their natural lives in the penitentiary and not thus be eligible for release consideration." In effect, the state said to the prisoner, "We won't try you again on these other charges if you agree to stay in the penitentiary the rest of your life. If, however, you are ever released we will try you." The prisoner chose the former, apparently, as the lesser of two evils, and consented to indefinite postponements of trial under the five pending indictments. The question is whether this was a valid consent.

■ As a bargain it was invalid and unenforceable. Under our statutes the only crimes which are permitted to be compromised are certain misdemeanors "for which the person injured by the act constituting the crime has a remedy by a civil action." ORS 134.010. The procedure to be followed in such cases is prescribed by ORS 134.020, and an order discharging the prisoner pursuant to such procedure is made "a bar to another prosecution for the same crime." ORS 134.030. It is then provided by ORS 134.040, "No crime can be compromised, nor can any proceeding for the prosecution or punishment thereof be stayed upon a compromise, except as provided in" the sections above referred to.

The agreement on the part of the state set forth in

the affidavit of Tennyson Jefferson was one for an indefinite stay of the prosecution of five indictments for felony based upon an implied p r o m i s e of the prisoner not to seek or accept executive clemency or other reprieve, but to remain in the penitentiary for the rest of his natural life. Such an agreement is a clear violation of ORS 134.040 and unenforceable. See *State v. Keep,* 85 Or 265, 271, 166 P 936. The nunc pro tunc order, to the extent that it was based on the illegal bargain, was likewise a nullity.

■ But this is not a case in which either party to an illegal bargain is attempting to enforce it. The state disclaims any purpose to resist the prisoner's right to a trial if he desires it. The prisoner repudiates the agreement, but, so far as anything in the record before us discloses, does not seek a trial; on the contrary, he says that because the agreement was illegal, and because of the statute, the state has lost the right to try him and he has gained the right to have the indictments dismissed. Here is the nub of the controversy.

That the prisoner consented to the postponement stands uncontradicted. That he could validly so consent cannot be denied. If he did so he is not entitled to an order of dismissal on the ground that he was "not brought to trial at the next regular term of the court in which the indictment is triable after it is found" (ORS 134.120), because that statute has no force where the trial is postponed upon the application or by consent of the defendant.

If there had been no agreement whatever, if the prisoner had simply consented to an indefinite postponement of the trial and the state had taken no action, the prisoner's waiver of his right to a speedy trial under the statute would have been not open to debate. We think that the case is no different because of the

void agreement. The consent of the prisoner, communicated to the district attorney and the court, that his trial on the other indictments should not be had as long as he was imprisoned, still remains. Had he formally renewed this consent at each succeeding term there can be no doubt that he could not thereafter justly complain that he had not been brought to trial. We are unable to see that the situation as it exists is in law any way different. The prisoner could have withdrawn his consent at any time he chose, but, as long as he allowed it to stand the state was justified in relying on it. Of one thing we may be sure, so far as the record discloses, the prisoner has never wished or sought to be tried on the pending indictments and he is not now demanding a trial. In ordinary circumstances he is not required under the liberal rule of this state to demand a trial, but, where consent by the accused to postponement of his trial for an indefinite length of time has been given, then there should be a withdrawal of such consent before a complaint of denial of a right to a speedy trial will be heeded.

■■ Aside from the nunc pro tunc order no order has ever been entered continuing the five pending cases by name. A number of orders of continuance from term to term of all the unfinished business of the court are in the record. The first of these after June 23, 1927, was entered May 24, 1931. In subsequent years such orders listed the pending criminal cases, not including, however, the D'Autremont cases. We think that the court had no authority to enter an order indefinitely postponing these cases. Where a case is not brought to trial at the next term of the court in which the indictment is found after it is triable, and has not been postponed upon the defendant's application or by his consent (ORS 134.120), and sufficient reason for the delay

is shown, "the court may order the action to be continued from term to term" (ORS 134.130). ORS 136.070 provides for the postponement of the trial of a criminal action when it is at issue upon a question of fact "to another day in the same term or to another term." There is no express provision for the continuance of a criminal action the trial of which has been postponed on the application or by the consent of the defendant other than that contained in ORS 136.070. Criminal cases may only be continued from term to term or to a day certain. The court, however, did not lose jurisdiction of the pending cases because no valid order of continuance was entered of record. A criminal case undisposed of will go over to the next term of court without entry of a formal order for continuance. 22 CJS 737, Criminal Law § 480; id. 833 § 523; *Raine v. State,* 143 Tenn 168, 226 SW 189. In the cited case the court said: "By section 7154 of Thompson's Shannon's Code it is expressly provided that after an indictment is found, no criminal prosecution can be dismissed, discontinued, or abandoned without leave of the court. Affirmative action of the court, therefore, is a prerequisite to such dismissal, and the record does not show that any such action was taken by the court below." It was therefore held in that case that failure to enter several orders of continuance did not cause the court to lose jurisdiction. We have in this state statutes which are similar to those referred to by the court in the Tennessee case. They are as follows:

ORS 134.150. "The court may, either on its own motion or upon the application of the district attorney, and in furtherance of justice, order an action, after indictment, to be dismissed; but in that case, the reasons of the dismissal shall be set forth in the order, which shall be entered in the journal."

ORS 134.160. "The entry of a nolle prosequi is

abolished, and the district attorney cannot discontinue or abandon a prosecution for a crime, except as provided in ORS 134.150."

No order of dismissal has ever been entered by the court in any of the pending cases, and it results that they were automatically continued from term to term notwithstanding the failure to enter of record orders of continuance from term to term.

It need only be added that there is no statutory limitation on the number of such continuances which may be made.

It is suggested in the brief for the prisoner that the statement in the affidavit of Tennyson Jefferson that it was explained to the three defendants that "under ordinary circumstances a person sentenced to life imprisonment in the Oregon State Penitentiary was eligible for release consideration after about seven and one-half years" contains a falsehood, as the statutes which provided that "No person serving a life sentence in the state penitentiary shall be eligible for release on parole until he has served at least seven years of the said sentence" was not passed until 1939. Oregon Laws 1939, ch 266, § 5.[1]

So far as we are able to ascertain, no statute of this state authorized parole of a person serving a life sentence in the penitentiary until the amendment of the former s t a t u t e authorizing the governor to grant paroles was adopted in 1933. Oregon Laws 1933, ch 44, § 1. This section was repealed by Oregon Laws 1939, ch 266, § 15.

It is further stated in the brief on behalf of the prisoner that the affidavit of Tennyson Jefferson avers

---

[1] This section has since been amended and now reads: "No person serving a life sentence in the state penitentiary for murder in the first or second degree is eligible for release on parole until he has served at least seven years of his sentence." ORS 144.230.

that it was agreed between the three defendants and the two representatives of the post office department that they would recommend to the court that the defendants, Ray and Roy D'Autremont, should be permitted to enter pleas of guilty to second degree murder on one of the remaining outstanding murder indictments and be sentenced to life imprisonment in the penitentiary, and that this was done; whereas in fact those defendants entered pleas of guilty to the charge of first degree murder, and the pleas and other evidence were submitted to a jury, and the jury returned a verdict recommending life imprisonment. The brief of the present district attorney agrees with this statement of counsel for the prisoner.

These obvious errors do not affect the merits of the motions to dismiss. They are not evidence of fraud, oppression or undue influence, but rather only of an imperfect memory of events that occurred 29 years before. The prisoner was represented by an attorney at the time that he consented to the postponement of the pending cases. On the record before us his consent was given freely and understandingly, and for the purpose of achieving what seemed to him to be a desirable end. It may well be that the ever-present threat of trial on three indictments for first degree murder makes the prospect of release from the penitentiary by parole or the exercise of executive clemency something less than an unmixed blessing for the prisoner. But this is an inescapable consequence of the situation in which he finds himself, and the situation was of his own making. If he now desires a trial on the pending indictments, a statute passed in 1955 provides the procedure for one in his position to obtain it. Oregon Laws 1955, ch 387, now ORS 134.510 through 134.570.

The five orders denying the motions to dismiss are affirmed.