Argued January 19, affirmed March 22, 1961

# STATE OF OREGON *v.* DODSON
### 360 P. 2d 782

*James W. Walton,* Corvallis, argued the cause for appellant. On the brief were Ringo and Walton, Corvallis.

*J. Alfred Joiner,* Deputy District Attorney, Corvallis, argued the cause for respondent. With him on the brief was John B. Fenner, District Attorney, Corvallis.

Before MCALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

LUSK, J.

This is an appeal by the defendant from a judgment of conviction on a charge of driving an automobile while under the influence of intoxicating liquor.

The principal question arises upon the court's denial of defendant's motion to dismiss the prosecution based on the claim that he was not accorded speedy trial.

The offense charged is a misdemeanor. ORS 483.992(2). The prosecution was initiated by a complaint filed in the District Court of Benton County

on November 24, 1958. The defendant was tried and convicted in that court on January 8, 1959, gave notice of appeal to the circuit court, and perfected his appeal by filing a transcript on appeal in the circuit court on January 26, 1959. On the same day he gave an undertaking to stay proceedings as provided in ORS 157.050. Thereafter the following proceedings were had:

May 5, 1959. Withdrawal of T. M. Morris as attorney for defendant.

May 13, 1959. Motion to dismiss appeal filed by District Attorney, with stipulation to dismiss appended, signed by defendant. Order dismissing appeal.

May 18, 1959. Motion of defendant to vacate order of dismissal, supported by defendant's affidavit. (Defendant now represented by counsel.) Motion of District Attorney to dismiss appeal.

May 21, 1959. Order vacating previous order dismissing appeal.

June 15, 1959. Order denying motion to dismiss appeal.

December 1, 1959. Defendant's motion to dismiss prosecution because of delay.

February 4, 1960. Foregoing motion denied.

March 31, 1960. Trial; judgment of conviction entered pursuant to verdict of jury.

Involved in the case are the construction and application of ORS 134.120 prior to its amendment by Oregon Laws 1959, ch 638, § 16, the amendment of that statute, and that portion of Article I, § 10, of the Constitution of Oregon which provides that "* * * justice shall be administered * * * without delay * * *." ORS 134.120 formerly read:

> "If a defendant indicted for a crime, whose trial has not been postponed upon his application

or by his consent, is not brought to trial at the next term of the court in which the indictment is triable after it is found, the court shall order the indictment to be dismissed, unless good cause to the contrary is shown."

The section now reads:

"If a defendant indicted for a crime, whose trial has not been postponed upon his application or by his consent, is not brought to trial within a reasonable period of time, the court shall order the indictment to be dismissed."

The amendment took effect on August 5, 1959. The terms of court in Benton county were provided to be held on the first Monday in January, the first Monday in March, the first Monday in June, and the first Monday in October. ORS 4.270. It will thus be seen that during the period of nearly 13 months from January 26, 1959, when the appeal was perfected, to February 23, 1960, when the defendant was brought to trial, former ORS 134.120 was in effect approximately half of the time and the amended statute approximately half of the time. It also appears that on August 5, 1959, the March term of the Benton County Circuit Court, which was "the next term of the court" after the indictment was found, had passed, and also a considerable portion of the June term.

Based on these facts and on the further fact that, as defendant insists, more than "a reasonable time" elapsed between the effective date of the amendment and the trial, the defendant contends that the court erred in denying his motion to dismiss the prosecution.

In our opinion, neither statute applies to this case. Under the statute before its amendment the starting point was the term in which the indictment was found. *State v. Crosby,* 217 Or 393, 401, 342 P2d 831. The amended statute does not expressly mention the event

from which "a reasonable time" is to be reckoned, but obviously it is the indictment since that is the only event mentioned aside from the trial itself.

We do not understand that defendant's counsel question this construction. They do urge, however, that the word "indictment" should be interpreted in a case like this to include "complaint"; that it is unreasonable to suppose that the legislature did not intend to provide the same speedy trial to the accused in a criminal proceeding in the justices' and district courts as in the circuit court, and that when an appeal from the district court is perfected by filing the transcript in the circuit court, that event should be deemed equivalent to the finding of an indictment and the statute made to operate accordingly.

Support is sought for this position by citation to *State v. Breaw,* 45 Or 586, 78 P 896 (1904), where it was held, or rather assumed, that the statute governed a case in which the prosecution was by information filed by the District Attorney. The *Breaw* case is inapposite and does not authorize this court to rewrite the statute by substituting the word "complaint" for "indictment." At the time of that decision prosecution by information was permissible under a statute (Bellinger and Cotton's Annotated Codes and Statutes of Oregon, Title 18, ch 4) enacted pursuant to § 18 of Article VII of the state constitution, which then provided that: "* * * the legislative assembly may modify or abolish grand juries." The statute was held valid, in view of the constitutional provision above quoted, in *State v. Tucker,* 36 Or 291, 61 P 894, 51 LRA 246 (1900). One section of this statute provided in part as follows:

"From the time any information is filed as provided in this act, the same shall be construed like an indictment, and shall be deemed to be in all

respects the same as an indictment within the meaning of the present statutes of this state, and thereafter until and including final judgment and execution. The same proceedings shall be had, and with like effect, as in cases where indictments are returned by a grand jury  \*  \*  \*." Bellinger and Cotton, supra, § 1260, p 534.

Under this section, long since repealed, the court was required in the *Breaw* case to treat the information as an indictment when considering the applicability of the statute providing for a speedy trial. There is no similar enactment applicable to complaints. ORS 156.030[1] equates a complaint with an indictment, but only in respect of the contents and form of the pleading.

In *State v. Miller*, 72 Wash 154, 129 P 1100, it appeared that the defendant, having been convicted in the Superior Court, appealed to the Supreme Court which reversed and remanded for a new trial. The defendant contended that he was entitled on the second trial to the benefit of a statute which provided that the court might order a dismissal if the defendant was not brought to trial within 60 days after the indictment was found or the information filed. It was argued that the filing of the remittitur with the trial court after reversal should, within the intent of the statute, be considered an indictment or information. The court held that the statute was satisfied when the defendant was tried within the statutory time on the first trial and that the statute was no longer applicable. The court said:

"\*  \*  \* The language of the statute is plain and unambiguous. The words used are simple and

---

[1] ORS 156.030. The complaint shall be deemed an indictment within the meaning of ORS 132.510 to 132.570, 132.590, 132.610 to 132.690, 132.710 and 132.720, which sections prescribe what is sufficient to be stated in such pleading and the form of stating it.

incapable of more than one meaning. Their natural meaning is that the specific limitation of time applies only to the first trial, since that trial in the natural sequence of events is the only one having an immediate relation to the time of filing the information. This is obvious, because in case of reversal on appeal, and usually in case of a new trial granted by the lower court, a retrial could not be had within sixty days after the filing of the information." 72 Wash 158.

To the same effect see *ex parte Alpine,* 203 Cal 731, 265 P 947, 58 ALR 1500; *People v. Lundin,* 120 Cal 308, 52 P 807; *Ferguson v. Beckly,* 224 Iowa 1049, 277 NW 755.

The foregoing are all cases in which a new trial has been awarded by the state's highest court. Where the question has arisen, as here, on appeal from a justice's court or a police court to a court of general jurisdiction, with a trial de novo, the same view of the applicability of similar statutes has been taken. *State v. Schnell,* 107 Mont 579, 88 P2d 19, 121 ALR 1082; *City of Casper v. Wagner,* 74 Wyo 115, 284 P2d 409.

ORS 134.120 as originally enacted, was, as we said in *State v. Kuhnhausen,* 201 Or 478, 515, 266 P2d 698, 272 P2d 225, "passed to carry out the requirement of a speedy trial", but, as we there held, it is not "a definition of the constitutional right." 201 Or 516. Whether the section in its present form may be said to be a definition of the constitutional right need not now be decided. It is enough that for the reasons already given, the statute itself cannot be invoked by the defendant.

■ Undeniably, it was within the province of the legislature to make the statute applicable exclusively to the prosecution of cases commenced in the circuit court.

This, we think, is precisely what the legislature has done. Since a criminal action in the justice's or district court cannot be commenced by indictment, but only by complaint (ORS 156.020, 156.610), the statute is without any application to prosecutions commenced in an inferior court. ORS 156.020, 156.610.

The reason why the legislature made this distinction is no concern of the court. Article I, section 10, of the constitution applies to all criminal prosecutions and may have been thought by the legislature to afford all the protection needed by the accused in cases originating in the inferior courts whose jurisdiction is limited to the trial of petty offenses.

It remains to consider whether, apart from the statute, the defendant has been deprived of a trial "without delay", which is the same thing as a speedy trial, in violation of his rights under Article I, section 10, of the constitution. This provision, of course, applies to all criminal actions, including this one.

In *State v. Kuhnhausen,* supra, we reaffirmed the rule that a speedy trial within the meaning of the constitutional provision "is one conducted according to fixed rules, regulations, and proceedings of law free from vexatious, capricious, and oppressive delay created by the ministers of justice.", and that "whether such a speedy trial has been afforded must be determined in the light of the circumstances of each particular case as a matter of judicial discretion." 201 Or 513.

The circumstances here are that the defendant was convicted in the district court of the offense charged and exercised his right to appeal to the circuit court, the appeal being perfected on January 26, 1959, and an undertaking given for a stay of proceedings on the same day; that he agreed in writing to a dismissal

of his appeal after his attorney had withdrawn and the appeal was dismissed on May 13, 1959; that on May 18, 1959, having secured new counsel, he moved for an order vacating the order of dismissal and the motion was granted; that, during all the time in question, with the exception of a period of less than two weeks, he was represented by counsel; that he resisted a motion of the District Attorney to dismiss the appeal and this motion was denied on June 15, 1959; that nothing further occurred in the case until December 1, 1959, when he filed his motion to dismiss the prosecution now under consideration; and that he has been at liberty all the while and has never asked for a trial.

■  This court is committed to the rule that it is not incumbent upon the accused to demand a trial or take affirmative action with a view to procuring his statutory right to a speedy trial. *State v. Crosby,* 217 Or 393, 401-402, 342 P2d 831; *State v. Chadwick,* 150 Or 645, 650, 47 P2d 232; *State v. Rosenberg,* 71 Or 389, 391, 142 P 624. This is the minority rule and is followed in only a few jurisdictions. 22 CJS 719, Criminal Law, § 469, 57 ALR2d 326, 334.

■■  Whether that rule should be applied where the defendant relies on a violation of the constitutional provision alone has not been decided. We do not decide it now, for the generality of cases, but we do hold that where the defendant has been accorded a speedy trial in a justice's court or a district court—as it must be presumed was the case here—and has been convicted and appeals to the circuit court the burden is upon him to prosecute his appeal with reasonable diligence. He is not in the same position as one brought into the circuit court in the first instance by the State to answer to a charge. On the contrary, he comes to that court with a judgment of conviction against him which

he is seeking to have erased. It is true that he is entitled to a trial de novo, but "[i]t is not a new action, but simply a retrial of an action in an appellate court for the purpose, theoretically, of correcting errors of the inferior court." *Nurse v. Justus,* 6 Or 75. It is a proceeding in which the defendant, not the State, is the moving party, not in the sense, of course, that the defendant has a duty to prove his innocence, but in the sense that he must take affirmative steps as prescribed by statute to gain the opportunity to defend a second time against the charge of which he was previously convicted and will not be permitted to win an acquittal simply because of inaction by the State.

In the similar case of *State v. Parmeter,* 49 Wash 435, 95 P 1012, the court said:

"* * * The respondent has already been awarded a speedy trial before a jury in the court of original jurisdiction. His appeal removed the cause to the superior court, and was taken for the sole purpose of obtaining another trial and securing his discharge, if acquitted. Under these circumstances he should at least have demanded such trial in the superior court before seeking a dismissal and discharge under the statute. * * *" 49 Wash 437.

*State v. Jones,* 80 Wash 335, 141 P 700, was decided on the authority of *State v. Miller,* supra. In that case the prosecution was dismissed by the trial court on application of the defendant for failure to bring the case to trial within the statutory time. The Supreme Court reversed. The court said:

"* * * The defendant was himself, in a sense, the prosecutor. He was seeking to relieve himself from an adverse judgment, and before he can claim the right to a dismissal and discharge of the adverse judgment, he must make a reasonable effort before the court itself to have the cause brought

on for hearing. Since he did not do this it follows that the judgment of dismissal and discharge was not warranted." 80 Wash 339.

It is true that one Washington statute provided that the appealing defendant shall give bond conditioned that he will appear in the Superior Court and prosecute his appeal, and another, that if he shall fail to prosecute his appeal he shall be defaulted of his recognizance and may be sentenced for the offense.

There are no similar statutory provisions in this state, but the reasoning of the Washington decisions applies here, nevertheless, and while dismissal of such an appeal for delay in its prosecution is not expressly authorized, neither should discharge of the defendant for delay be sanctioned, in the absence of some effort on his part to bring the case to trial or, at least, some indication that he wants a trial.

Nor can the Washington cases be distinguished on the ground that the Washington court adheres to the majority rule that the defendant waives his right to a speedy trial unless he demands it. See 57 ALR2d 326, 327. That is true where the right is claimed under the constitutional guarantee. It is not true where a failure on the part of the State to comply with the statutory mandate is sustained. In such a case "[t]he State must take the initial action". *State ex rel James v. Superior Court,* 32 Wash 2d 451, 455, 202 P2d 250. See also, *State v. Lydon,* 40 Wash 2d 88, 90, 241 P2d 202; *State v. Miller,* supra, 72 Wash at 158. In both *State v. Parmeter* and *State v. Jones* violation of the statute was claimed. In the former the case was decided on the assumption that the statute was applicable, but, due to the circumstances, the right to claim under it was held to have been waived. In the latter the statute was held inapplicable, but, without regard to the distinction

above pointed out between the statute and the constitutional provision, the burden of "initial action" was shifted to the defendant.

Further support for the view we take is found in *State v. Schnell* and *City of Casper v. Wagner,* both supra. In neither of these cases was there involved an express statutory requirement that on appeal from an inferior to a superior court the defendant must prosecute the appeal diligently. Both cases hold that the defendant is not entitled to a discharge for delay when he has had a speedy trial in the inferior court and appeals and makes no demand for a trial.

We conclude that the court did not err in denying the motion to dismiss the prosecution.

The only other assignment of error is directed to the court's denial of defendant's motion for mistrial. During the selection of the jury, the court announced that the panel was exhausted and asked counsel whether they would stipulate to try the case before the eleven jurors then in the box and whether they had any further challenges. Counsel for the defendant answered: "No." At that time the defendant had used five challenges, the State one.

The defendant's motion for a mistrial made in chambers was stated to be on the ground that the judge's question was prejudicial because it put the defendant in the position of "refusing to accept the verdict of those eleven jurors" and on the further ground that in Benton county the practice is to use the "written challenge system" under which a juror does not know who has challenged him. As stated in the defendant's brief, the court's remarks had the effect of "a denial of his right to a peremptory challenge in accordance with the ordinary and common rules of the court."

■ We cannot see any necessary prejudice in the judge asking counsel whether they are willing to try a case with eleven jurors. To decline to acquiesce in the suggestion is not a reflection on the eleven, but merely the expression of a preference for one's constitutional right to twelve. Perhaps, to avoid all possibility of some juror putting an erroneous construction on the incident, it is better to consult counsel about the matter out of the presence of the jury; but this is a remote possibility and we think that the trial judge is in a better position than this court to say whether harm has been done. At most, the motion for mistrial was addressed to the discretion of the judge. We cannot say that his discretion was abused.

■ As to the second ground, the court's question in no manner tended to deprive defendant of the right to use his remaining challenge in the customary method. The abbreviated record before us does not disclose whether the defendant used that challenge, or, if so, whether it was by the written or "secret" method or the "open" method.

■ The testimony has not been brought to this court. We must, therefore, assume that defendant had a fair trial and was properly convicted.

We find no error and the judgment is affirmed.