76 N.J. Super. 353 (1962)
184 A.2d 655
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES J. PATTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 17, 1962.
Decided October 4, 1962.
*354 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. James Joseph Patton, appellant, pro se.
Mr. Norman Heine, Camden County Prosecutor, attorney for respondent, Mr. Stephen M. Gretzkowski, Jr., Assistant Prosecutor, on the brief.
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant appeals from denial by the Camden County Court of his motion to compel the immediate trial or, alternatively, dismissal of an indictment lodged against him charging armed robbery.
The underlying facts are these: On March 6, 1951 defendant allegedly committed an armed robbery of a business establishment in Camden and escaped. On March 19, 1951 he was arrested in Philadelphia, after an unsuccessful attempt to hold up the Hamilton Savings and Loan Association in that city. Allegedly this was his second attempted holdup of the savings and loan association, the first having taken place on March 9, 1951.
It is represented by the State that defendant was sentenced to confinement in the Eastern State Penitentiary in Philadelphia for a maximum term which was to expire on March 28, 1959. He became eligible for parole March 28, 1955 but declined to file an application therefor.
On May 3, 1951 the Camden County grand jury indicted defendant for the attempted robbery committed there, and a warrant was lodged against him at Eastern State Penitentiary.
In March 1958 the Camden County Prosecutor was notified by the United States Department of Justice, United *355 States Penitentiary, Atlanta, Georgia, that in addition to the Camden charge it held detainers from Birmingham, Alabama, for robbery, Upper Marlboro, Maryland, for robbery with deadly weapon, and Northampton, Massachusetts, for armed robbery.
The State is unable to inform us concerning defendant's transfer from Eastern State to the federal prison at Atlanta where he is presently confined. In any event, he is scheduled for release therefrom on March 7, 1966.
It appears that on three occasions, July 1959, April 13, 1961 and June 8, 1961 defendant requested the prosecutor's office to bring him to trial on the Camden County indictment. Each time he was informed that his request was denied and that disposition of the matter would be deferred until the expiration of the federal sentence.
In July or August 1961, defendant filed an application for a "writ of mandamus" entitled in the "Court of Oyer and Terminer," directing Camden County to show cause why he should not be granted a speedy trial or, alternatively, have the indictment dismissed.
We pass the obvious misnomers of court and proceeding and consider the application on the merits.
The basis of the opposition of the State to defendant's application is: (1) "defendant himself caused the delay by crimes that he committed after the Grant store [Camden] incident," (2) "doubt exists as to whether the federal authorities would permit the prisoner to stay in our county jail pending assignment of counsel and investigation and preparation for defense by said counsel," and (3) the grant of defendant's request would involve substantial expense to the State.
At the outset it is well to bear in mind that defendant does not seek in this proceeding the dismissal of the indictment for the reason that the State has not given him the speedy trial guaranteed by N.J. Const. 1947, Art. I, par. 10. Rather, the relief sought is an order compelling the State "to bring the defendant into court and either try him or dismiss *356 the indictment." Thus, the application in effect is based upon R.R. 3:11-3(b) (formerly R.R. 2:12-4(b)) which provides:
"(b) At any time after 6 months following the return of an indictment or the filing of an accusation, the Assignment Judge may direct that the trial of the indictment or accusation shall be moved upon a day specified. Upon failure of the prosecuting attorney to comply with such order, the Assignment Judge may order the indictment or accusation dismissed, which dismissal shall be the equivalent of a judgment of acquittal."
In State v. Smith, 10 N.J. 84, 92-94 (1952), the Supreme Court found occasion to discuss the common law background of R.R. 3:11-3(b), as exemplified by cases such as Apgar v. Woolston, 43 N.J.L. 57 (Sup. Ct. 1881), and State v. Hickling, 45 N.J.L. 152 (Sup. Ct. 1883). In Smith, the court said:
"These cases are clearly authority for the proposition that under common law as it existed in this State the court is without power to dismiss an indictment at the instance of a party and that its power is limited to a discharge from imprisonment or an order that `the defendant shall be discharged on his own recognizance.' It was the above-quoted decisions that resulted in the applicable statutes being amended in the Revision of 1898, L. 1898, c. 237, sec. 53, in which the language `the defendant shall be discharged on his own recognizance' was introduced in place of the language `he shall be discharged from his imprisonment.' A similar interpretation was placed upon the provisions of section 52 of the Habeas Corpus Act, Revision of 1877, R.S. 2:188-1, N.J.S.A., presently superseded by Rule 2:12-4. Cf. Patterson v. State, 50 N.J.L. 421 (E. & A. 1888).
For the purpose of clarity and to emphasize that the provisions of this rule are consistent with the common-law decisions of this state, Rule 2:12-4 [now Rule 3:11-3(b)] is repeated here:
`(a) Upon motion of the prosecuting attorney, the court may order a nolle prosequi of an indictment or accusation. Such a nolle prosequi may not be filed during the trial without the consent of the defendant.
(b) At any time after six months following the return of an indictment or the filing of an accusation, the Assignment Judge may direct that the trial of the indictment or accusation shall be moved upon a day specified. Upon failure of the prosecuting attorney to comply with such order the court may order the indictment or accusation dismissed, which dismissal shall be the equivalent of a judgment of acquittal.
(c) If there is unnecessary delay in presenting the charge to a grand jury or in filing an accusation against a defendant who has *357 been held to answer upon a complaint, the Assignment Judge may dismiss the complaint.'
This rule in effect vests in the assignment judge all the powers with respect to indictments and complaints exercised by the judges of the court of oyer and terminer and general gaol delivery at the common law, 4 Chitty's Blackstone [*]270 et seq., and these same powers were exercised in this State under the Constitutions of 1776 and 1844 by the Supreme Court justices as presiding justices of these courts, or the judges of the court of common pleas. The powers and duties of these judges in this respect have devolved presently upon the assignment judge of the Superior Court in the county where the indictments are returned.
Defendants never had under the constitutional guaranty of a speedy trial the right to have an indictment dismissed; they merely could apply to the court to fix a day certain and on the failure of the State to proceed they could be discharged on their own recognizance or a judgment of acquittal entered.
Rule 2:12-4(b) goes one step farther and permits the court to order the indictment or accusation dismissed, `which dismissal shall be the equivalent of a judgment of acquittal.' The appellant has never been constitutionally guaranteed more than that, and his right to discharge from custody or to have the accusation dismissed absolutely and a judgment of acquittal entered never became absolute until he had applied to the court to fix a day certain for the trial of his indictment and then only on the failure of the State to proceed with the cause.
The right to a speedy trial is a personal one but it is an important one and it is guaranteed to each one who may stand accused of a crime, not only to one so accused for the first time but to the habitual offender. 14 Am. Jur., Criminal Law, sec. 134.

* * * * * * * *
Rule 2:12-4(b) is directory and permits the assignment judge at any time after six months following the return of an indictment or accusation to direct that it be moved upon a day specified. This provision follows the traditional practice of the common law and the court of oyer and terminer and general gaol delivery and should be followed wherever possible where the prisoner is incarcerated in a prison in this State. Of course, where the defendant is incarcerated in a prison of a foreign state or in a prison of the United States an exception to the rule arises where the prison authorities of the other jurisdiction refuse in their discretion to release the prisoner for the time necessary to put him to trial in this State. See Ponzi v. Fessenden, 258 U.S. 254, 255, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879 (1922).
As stated, the right to a speedy trial being an important right the assignment judges must or should attempt in all cases where possible to bring the trial of the indictments on in accordance with the provisions of Rule 2:12-4." (Emphasis added)
*358 We are not impressed by the arguments offered by the State in resisting defendant's efforts to obtain a trial. Although there are expressions to the contrary, see e.g., McCary v. Kansas, 281 F.2d 185, 187 (10 Cir. 1960), cert. denied 364 U.S. 850 (1960), the idea of permitting other offenses committed by a prisoner to affect his constitutional right to a speedy trial appears to us to be illogical and unjust.
As noted in Smith, supra, the surrender of a federal prisoner to a state for a trial in a state court on state charges, rests entirely within the discretion of the United States; and no state, as a matter of unqualified right, can insist or require that a federal prisoner be produced for trial before its tribunal. McCary v. Kansas, supra.
However, the Federal Government administratively has provided procedures whereby a state filing a detainer with the Government may obtain the release of a prisoner for trial in the state. See Bulletin No. 384, "Manual of Policies and Procedures, Department of Justice, Bureau of Prisons," as revised. As a matter of fact it is represented by defendant that during his present incarceration he was released by the federal authorities to the State of Alabama in order to defend an indictment upon which he was subsequently acquitted.
While the procedure set forth in the Manual is expensive to the requesting state, we feel strongly that the duty of the state to accord a person a speedy trial on his demand should ordinarily outweigh a consideration of expense incurred by the state.
The application of the prisoner is therefore referred to the assignment judge of Camden County with the direction that it be disposed in a manner consistent with R.R. 3:11-3(b), supra.