Argued April 4, affirmed October 4, 1967, United States
Supreme Court denied certiorari March 4, 1968

## STATE OF OREGON, *Respondent, v.* BERT MITCHELL EVANS, JR., *Appellant.*

### 432 P. 2d 175

*John Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Lawrence A. Aschenbrenner, Public Defender, Salem.

*Jacob B. Tanzer,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

McALLISTER, J.

The defendant, Bert Mitchell Evans, Jr., was convicted in Multnomah county of the crime of larceny

and sentenced to five years in the penitentiary, from which judgment he appeals. He contends only that the trial court erred in denying his motion to dismiss the indictment because of the delay in bringing him to trial.

The controlling facts are listed in chronological order as follows:

On May 26, 1964, defendant committed the crime of larceny in Multnomah county.

On June 1, 1964, defendant was arrested by federal authorities for violation of the Dyer Act.

On June 3, 1964, an information was filed in the municipal court of Portland, charging defendant with the larceny committed on May 26.

On July 20, 1964, defendant was sentenced by the United States District Court for Oregon to imprisonment for 18 months in the federal penitentiary at McNeil Island, Washington, and was incarcerated there.

On September 29, 1964, an Oregon detainer warrant was filed with the warden of the federal penitentiary.

On November 6, 1964, defendant filed, by mail, in the circuit court for Multnomah county a motion for a speedy trial of the larceny charge pending against him. A similar motion was filed by defendant in March, 1965. No effort was made to return defendant to Portland for trial in response to his motions.

On September 15, 1965, defendant was released from the federal penitentiary, and apparently taken into custody by Washington authorities under the Oregon warrant.

Defendant did not waive extradition, and it was on or about October 11, 1965, before he was returned to Oregon. On that date he was taken before a municipal judge in Portland and released to the sheriff of Multnomah county.

On December 28, 1965, defendant was arraigned and counsel was appointed for him. On that date the state, to avoid further delay, offered to try defendant's case forthwith by substituting it for any other criminal case on the docket, which offer was not accepted.

On January 4, 1966, defendant entered a plea of not guilty, and his case was set for trial on February 7, 1966.

On defendant's motion the trial was postponed until March 7, 1966. On that date the defendant was found guilty and sentenced to a term of five years in the penitentiary.

A speedy trial is guaranteed to a person accused of crime by Art. I, § 10, of the Oregon Constitution which provides that "justice shall be administered openly and without purchase, completely and without delay." In *State v. Vawter*, 236 Or 85, 90, 386 P2d 915 (1963), we held that this provision should be given the same construction as the guarantee of a speedy trial contained in the Sixth Amendment to the Constitution of the United States. The Supreme Court of the United States has now expressly made the Sixth Amendment's guarantee of a speedy trial applicable to the states through the due process clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 US 213, 87 S Ct 988, 18 L Ed2d 1 (1967). We must, therefore, apply a constitutional standard no less favorable to the accused than has been applied by the Supreme Court.

■■ We have held that a person accused of crime does not forfeit his right to a speedy trial because he is an inmate of a penal institution within this state. *State v. Vawter, supra; State v. D'Autremont*, 212 Or 344, 317 P2d 932 (1958). Inmates of our penal institutions may obtain a speedy trial of criminal charges

pending or filed against them during imprisonment by requesting a prompt trial thereof as provided in ORS 134.510 to 134.560.

We now hold in accord with the modern view that a federal prisoner upon his request is entitled to a speedy trial of a criminal charge pending against him in Oregon. *Richerson v. State of Idaho,* 91 Idaho 555, 428 P2d 61 (1967); *Barker v. Municipal Court of Salinas Jud. Dist.,* 64 Cal2d 806, 51 Cal Reptr 921, 926, 415 P2d 809, 814 (1966); *Commonwealth v. McGrath,* 348 Mass 748, 205 NE2d 710, 713 (1965); *State ex rel Fredenberg v. Byrne,* 20 Wis2d 504, 123 NW2d 305, 308 (1963); *State v. Patton,* 76 NJSuper 353, 184 A2d 655, 658 (1962), aff'd 42 NJ 323, 200 A2d 493 (1964); *People v. Piscitello,* 7 NY2d 387, 198 NYS2d 273, 165 NE2d 849, 850 (1960). This right is contingent upon the request of a prompt trial by the federal prisoner and the consent of the federal authorities to the return of the prisoner to Oregon for trial. Title 18 USCA § 4085 (1951 ed).

The defendant in this case on November 6, 1964, requested a prompt trial of the charge pending against him in Multnomah county, and in March, 1965, repeated his request. We will assume that defendant's first request was in proper form and that if a request had been made by the Governor of Oregon pursuant to Title 18 USCA § 4085, the Attorney General of the United States would have transferred defendant to Oregon for trial. We must then decide whether defendant was denied his constitutional right to a speedy trial.

The test consistently applied by this court in determining whether the right to a speedy trial has been violated is stated in the following language in *State*

*v. Kuhnhausen,* 201 Or 478, 513, 266 P2d 698, 272 P2d 225 (1954):

"'* * * Wholly apart from the statute, the constitutional right of an accused person to a speedy trial contemplates a trial conducted according to fixed rules, regulations, and proceedings at law, free from vexatious, capricious, and oppressive delays. The right is consistent with delays, and, in the final analysis, whether such a speedy trial has been afforded must be determined in the light of the circumstances of each particular case as a matter of judicial discretion. * * *'"

The foregoing language has been quoted with approval in *State v. Dodson,* 226 Or 458, 465, 360 P2d 782 (1961); *State v. Jackson,* 228 Or 371, 378, 365 P2d 294, 89 ALR2d 1225 (1961); and *State v. Vawter, supra,* 236 Or at 92.

Turning to the federal cases, we find that a similar test has been applied. The Supreme Court of the United States has required only "orderly expedition,"[1] and proscribed only "purposeful or oppressive" delay.[2]

The latest interpretation by the Supreme Court of the Sixth Amendment's guarantee of a speedy trial is found in *United States v. Ewell,* 383 US 116, 86 S Ct 773, 15 L Ed2d 627 (1966), at 15 L Ed2d 630-631, as follows:

"We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior

---

[1] Smith v. United States, 360 US 1, 10, 79 S Ct 991, 3 L Ed2d 1041, 1048 (1959).

[2] Pollard v. United States, 352 US 354, 361, 77 S Ct 481, 1 L Ed2d 393, 399 (1957).

to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, 198 US 77, 87, 49 L ed 950, 954, 25 S Ct 573. 'Whether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends upon the circumstances. . . . The delay must not be purposeful or oppressive,' Pollard v. United States, 352 US 354, 361, 1 L ed 2d 393, 399, 77 S Ct 481. '[T]he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 US 1, 10, 3 L ed 2d 1041, 1048, 79 S Ct 991." [Footnote omitted]

In *Hoag v. New Jersey,* 356 US 464, 78 S Ct 829, 2 L Ed2d 913 (1958), reh. den. 357 US 933, 78 S Ct 1366, 2 L Ed2d 1375, the Supreme Court found no denial of a speedy trial where trial of a state charge in New Jersey was delayed nearly four years, where a substantial portion of the time was accounted for by defendant's incarceration in New York.

In *United States ex rel Von Cseh v. Fay,* 313 F2d 620 (2d Cir 1963), it was held that a delay of three years and seven months in the trial of state charges by New York did not violate defendant's right to a speedy trial where the state's principal witness was

out of the country. The case was promptly tried when the witness returned and there was no showing of prejudice.

In *United States v. Simmons,* 338 F2d 804, 807-808 (2d Cir 1964), cert. den. 380 US 983, 85 S Ct 1352, 14 L Ed2d 276, it was held that the right to a speedy trial was not violated by a delay of 27 months in the trial of defendant on federal charges, nine months of which was due to defendant's confinement in a state prison. The court said:

"* * * As we have noted, '[f]our factors are relevant to a consideration of whether denial of a speedy trial assumes due process [or Sixth Amendment] proportions: the length of delay, the reason for the delay, the prejudice to defendant, and waiver by the defendant. See Note, 57 Colum. L. Rev. 846, 861-63 (1957).' United States ex rel Von Cseh v. Fay, supra, 313 F2d at 623. Here, the delay was not unduly long. The reason was Simmons' imprisonment in another state. Even assuming, though it is not apparent in the record, that New York would have made Simmons available for trial, compare Kyle v. United States, 211 F2d 912 (9th Cir 1954), we do not think it unreasonable for the Government not to put to immediate trial a person having at the most 10 or 11 months remaining to be served on a sentence in a state prison in another state. It is a different matter when the sentence is as long as 6 or 7 years. See Taylor v. United States, supra, [238 F2d 259 (DC Cir 1956)]. In some cases the delay might be so substantial as to be prima facie prejudicial. United States v. Lustman, 258 F2d 475, 478 (2d Cir.), cert. denied, 358 US 880, 79 S Ct 118, 3 L Ed2d 109 (1958). * * * *"

We must then apply the tests established by this court and the Supreme Court to the facts of this case. The defendant gave notice on November 6, 1964, that

he wished to be tried on the charge pending against him in Multnomah county. Defendant was released from the federal penitentiary on September 15, 1965, and except for his refusal to waive extradition presumably would have been returned to Portland on that date, and the ordinary procedures for the prosecution of the criminal case would have gone forward.

There can be no serious complaint about any delay after defendant was released from the federal prison. Although the record is not clear, the extradition proceedings insisted upon by defendant delayed his return to Portland until on or about October 11, 1965. Through some oversight defendant was not arraigned until December 28, 1965, when counsel was appointed for him. At that time the state, in order to avoid any further delay, offered to try defendant's case forthwith by substituting it for any other case on the criminal docket. This offer was not accepted and defendant's case was set for trial on February 7, 1966. For some reason not disclosed by the record defendant requested that his trial be postponed, and it was set over until March 7, 1966.

There is no reason to assume that any shorter time would have elapsed between defendant's return to Portland and the trial of his case if he had been returned from the federal penitentiary in response to his motion of November 6, 1964. We are, therefore, dealing with a delay of ten months and nine days at most, occasioned by defendant's incarceration in the federal prison at McNeil Island. We could also exclude the time that would have been consumed in the preparation and processing of a request by the Governor of Oregon to the Attorney General of the United States for the return of the defendant to Oregon and his delivery to this state.

■ It affirmatively appears from the face of the record in this case that defendant was not prejudiced in the slightest degree by the failure of the state to request his return from the federal prison to Oregon for trial. Before the state had completed its case against him, defendant, personally and by counsel, and after warning by the court, waived his right to a trial by jury, stipulated that the evidence which had been introduced by the state was true, and that he had taken property described in the indictment, of the requisite value to constitute larceny. Pursuant to the stipulation, the jury was dismissed, both parties rested without offering further evidence, and the defendant was found guilty by the trial judge. The object of this maneuver by defendant was to concede his guilt without a formal plea of guilty and to preserve his right to appeal the denial of his motion to dismiss the indictment.

We conclude that under the circumstances of this case the relatively short delay of about ten months did not amount to a violation of defendant's constitutional right to a speedy trial. Those states that have extended to federal prisoners the right to a speedy trial of criminal charges pending against them in the state courts have only been concerned with the avoidance of "oppressive" delays.

In *Richerson v. Idaho,* supra, although 22 months had elapsed after the demand for trial by a federal prisoner, the Idaho Supreme Court remanded the case for "a sincere effort" by the prosecuting authorities to obtain custody of the accused from the federal authorities for trial on the charge pending in Idaho.

In *Barker v. Municipal Court of Salinas Jud. Dist.,* supra, the federal prisoners had repeatedly requested trial on the state charges, the federal authorities had

indicated a willingness to cooperate, but the state prosecuting authorities had declined over a period of 18 years to obtain custody of the prisoners and bring them to trial.

In *Commonwealth v. McGrath,* supra, about 19 months had elapsed from the demand by the federal prisoner for trial of the charges pending against him in Massachusetts. The court did not dismiss the indictment, but ordered that "the Commonwealth within a reasonable time must take the necessary steps to bring the defendant into this Commonwealth for trial on the three Suffolk County indictments and if it fails to take such steps the defendant is entitled, upon appropriate motion, to have the indictments dismissed."

*State ex rel Fredenberg v. Byrne,* supra, was a mandamus proceeding to require two state district attorneys to obtain return of a federal prisoner for trial of state criminal charges which had been pending almost two years. A peremptory writ was issued requiring the district attorneys to promptly obtain the return of the prisoner for trial, or to move the state courts to dismiss the pending charges.

*State v. Patton,* supra, was a proceeding to compel immediate trial, or in the alternative, dismissal of the charges which had been pending about three years after demand for trial. The case was remanded for disposition under a court rule requiring either trial upon a day fixed by the Assignment Judge, or dismissal of the indictment.

In *People v. Piscitello,* supra, the indictment was dismissed because of a delay of 17 months between indictment and arraignment where the accused was in federal custody in New York county, the same county in which the state charges were pending.

In *State v. Vawter,* supra, 236 Or at 96, we held that "[w]hen the period of time that has elapsed after the defendant is held to answer is of such length as to be manifestly excessive and unreasonable, it may be incumbent upon the state, in order to avoid dismissal of the indictment, to justify the delay, but the delay in this case was not of that character." The *Vawter* case involved a delay of seven and one-half months in the trial of charges against a defendant who during most of that period was confined in the state penitentiary. We held that the trial court did not err in denying a motion to dismiss the indictment.

■ We find particularly applicable here the oft quoted statement made in *State v. Keefe,* 17 Wyo 227, 98 P 122, 22 LRA NS 896, 906 (1908), that in the case of convicts "a trial might be longer delayed, in the absence of a statute controlling the question, than in the case of one held in jail merely to await trial, without violating the constitutional right, for an acquittal would not necessarily terminate imprisonment." The fact that defendant was incarcerated in a federal penitentiary in another state is one of the circumstances to be considered in determining whether he has been denied a speedy trial. There is no indication that defendant would have been better off if the state had brought him to Oregon, convicted him, and then sent him back to McNeil Island to serve ten months before again bringing him to Oregon to serve his five-year sentence in our penitentiary.

As this court said in *State v. Harris,* 101 Or 410, 415, 200 P 926 (1921):

"* * * The constitutional provision for a speedy trial was not intended to provide a loophole for the escape of one accused of the commission

of an offense without trial when the same is had within a reasonable time. * * *"

We find no evidence of any vexatious, capricious or oppressive delay in this case, and the judgment of the trial court is affirmed.

SLOAN, J., dissenting.

It is instantly obvious to anyone studying this case that neither our courts nor other officials of this state can compel the custodians of federal prisoners to produce them in our courts. But it is equally clear that the federal custodians, upon proper request, will deliver one of their prisoners to an Oregon court. Therefore, this court can and should say that when a federally confined prisoner seeks immediate trial it is incumbent on the prosecutor to activate that request. The majority opinion does no more than tell the district attorney that this is advisable. But the result of the instant case is not the important fault of the majority opinion. The real fault is the failure to recognize the stronger and more demanding policies that have evolved from the need for a speedy trial.

The policy of this state in respect to the immediate trial of a person confined within the state is expressed in ORS 134.510(1) et seq. These statutes permit the inmate charged with another offense to send a notice to the proper district attorney requesting trial. ORS 134.520(1) requires that the one charged be brought to trial within 90 days. Further delay can be had only by his consent or by order of the court upon good cause shown by the district attorney. ORS 134.530 requires the court to dismiss the case if it is not brought to trial as provided by ORS 134.520.

The need for and the design of a method to obtain prompt trial that is expressed in our statute has been

recognized and implemented by the Council on State Governments. The Council has proposed an agreement between the states on detainers by which a prisoner of one state may clear detainers filed against him by jurisdictions outside the state in which he is imprisoned. This agreement provides that a prisoner must be brought to trial by the charging state within 180 days after the prisoner's request to be returned to the detaining state for trial, or the charge must be dismissed. Fifteen states had adopted this agreement by the end of 1965. Handbook on Interstate Crime Control, page 91, published by the Council of State Governments, rev ed 1966.

The need and virtue of that idea has also been recommended by the American Bar Association Report on Minimum Standards for Criminal Justice. See Tentative Draft of Standards Relating to Speedy Trial. Although the Task Force Report on the Courts by the President's Commission on Law Enforcement and Administration of Justice is primarily concerned with other policy questions relating to delay, its findings and recommendations are pertinent to the problem presented by this case.

The policy found in our statutes and in the cited recommendations is of more far reaching consequence than that suggested by the majority, and the policy is not wholly altruistic. Trial without delay can promote pleas of guilty, early fact finding and determination of the charge, plea bargaining[1] and other action eliminating court congestion. And, it is not only defense witnesses who expire or disappear. In short, the policy to be implemented, when possible, is that definite rules

---

[1] The Task Force Report recommends reconsideration of the idea of a negotiated plea of guilty, p 9 et seq.

relating to speedy trials provide better administration of justice by the courts than attempting to solve, after trial, the unworkable equation of what is oppressive delay.

The vice of the majority opinion is that it does not adhere to that policy. Whether or not there was just cause to delay defendant's trial should have been decided by the court when he first petitioned to be brought to Oregon for trial, not after the event as the majority now permit. The positive rule, the rule that would provide certainty in the future would be to hold that it was error for the district attorney and the court to disregard defendant's petition. We should hold that a hearing should have been provided at that time to decide whether or not it was feasible, reasonable and necessary to allow the petition. Failure to have done so should be cause for discharge.